ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, a Corporation, Appellant, v. F. C. KING.—50 S. W. (2d) 94.

Division One, April 2, 1932.

1204

E. T. Miller and Phil M. Donnelly for appellant.

1206

*W. D. Jones, E. W. Allison* and *Barton & Moberly* for respondent.

HYDE, C.—This is an action in ejectment to recover a triangular strip of ground, which plaintiff claims is a part of its right of way, in the city of Rolla. Samuel Copp, as trustee for the Pacific Railroad, under which plaintiff claims title, was granted 40 acres of land by the United States government in 1858. This land was described as the northeast quarter of the northeast quarter of section 11, township 37, range 8. Copp, in the same year, conveyed to Phelps County a triangular tract, in the northwest corner of this 40-acre tract, containing about 3 1/2 acres. The northeast corner of this triangular strip was 424 feet east of the northwest corner of the 40-acre tract and its southeast corner was 737 feet south of it. The proposed railroad right of way ran diagonally southwest along the east side of the tract. The consideration for the conveyance of this land, and other land in the south part of the 40-acre tract, on the other side of the right of way, was that the county establish its county seat at Rolla. In 1861, Copp, as such trustee, with the Pacific Railroad joining in the deed, conveyed to one Stancliff all of the rest of the 40-acre tract, except:

"A strip of land lying on each side of and including the road bed and depot grounds of the southwest branch of the Pacific Railroad, said strip of land commencing at a point where the Railroad track enters the north section line of said piece of land and being fifty feet wide on the east side of the center line of the railroad track and two hundred and fifty feet wide on the west side of the center line of said railroad track and continuing a uniform width to a point where said railroad track strikes Seventh street as the same is laid down on the plat of the town of Rolla."

By deed dated January 17, 1872, Copp, as trustee for the Pacific Railroad, conveyed this excepted strip to its successor, the Atlantic and Pacific Railroad, by this same description. Prior to that date, there had been platted, what was known as the county addition to the town of Rolla. The 3 1/2 acre triangular strip, in the northwest quarter of the 40-acre tract, was included in this addition. The original plat of this addition is not in the record furnished us. However, from other plats in the record it appears that this county addition also included part of the next 40-acre tract west of the one Copp held as trustee for the railroad. The west half of blocks 52 and 55 are in that 40 acre tract and the east half of these two blocks are in the 3 1/2 acre triangular strip in the northeast quarter of the northeast quarter. Tenth Street was laid out along the north line of the

section. Ninth Street, upon which defendant's property fronts, is near the center of the 3 1/2 acre triangular strip, and Eighth Street runs across the strip just above its southern point. Elm Street runs south, through the strip, from about the center of its north side. The main line railroad track, instead of being located 250 feet from the east side of the triangular strip, conveyed to the county, is now only 175 feet from it, measuring on a right angle from the track, or 203 feet measuring along the north section line. The other blocks in the 3 1/2 acre triangular strip are 51 and 56. Block 51 is in the northeast part of the strip and is full size except that the 175-foot line from the main track cuts off its southeast corner. Block 56 is a small triangular strip fronting about 64 1/2 feet on the south side of Ninth Street and about 113 1/2 feet on the east side of Elm Street, which is only about half of the distance between Ninth Street and Eighth Street.

The original depot seems to have been, at about the point, where Eighth Street now crosses the railroad tracks. Coop, as trustee for the railroad company, in 1860, conveyed to Faulkner and Graves a tract of land between the 3 1/2 acre triangular strip, thus platted as a part of the county addition, and its main track south and east of triangular block 56, fronting on their track 127 1/2 feet and 100 feet deep. The deed described this land as "Lots D, E and one-half of Lot F, as the same has been surveyed and platted by the Pacific Railroad on their switch at the depot at Rolla." The front of this tract was only 75 feet from the main track, measuring at right angles from it. The south side of this tract conveyed to Faulkner and Graves took in a triangular strip in Eighth Street, which caused a jog in that street to the southeast. This Faulkner and Graves' land, in 1875, became the property of Ann M. Crandell, and a hotel was built on it. At that time triangular block 56 belonged to the school district of Rolla, which had its schoolhouse there.

In 1881, the schoolhouse, hotel and depot burned. The railroad company rebuilt its depot northeast of the old site. To straighten Eighth Street, Mrs. Crandell deeded the city the part of her lot in the street, and the railroad conveyed, to her, a triangular tract, on the north side of her lot, the size and dimensions of the tract she deeded the city. This strip included most of the rest of Lot F referred to in the Faulkner and Graves deed. A hotel was again built on this tract. At the same time the city closed Ninth Street, so that it no longer crossed the railroad tracks, and allowed the railroad to build a freight depot across it. The railroad company has a switch, called their house track, on the west side of the present depot. The school-house was not rebuilt and block 56 was sold by the school district. Later on, a brick livery barn was built there which extended 20 feet

into Elm Street. This livery barn fronted about 60 feet on Ninth Street and extended back from 36 to 40 feet with a shed on the south side. It does not seem to have, however, extended over the east boundary line of block 56, onto the land now claimed by the railroad. However, it is claimed, by the defendant, that, for many years prior to the time he claims he bought the property, in 1916, and even as far back as when the Crandells operated the hotel, there was a fence from the northeast corner of the hotel property to the northeast corner of block 56, which enclosed more land to the east than defendant now claims. This fence was said to have been part of a fence enclosing a lot where horses, hogs and cows were kept back of the livery barn. The hotel property and block 56 came into the hands of the same owners soon after the fire in 1881. Former owners and others familiar with the ownership of the property, ever since the fire, testified to these fences and the use of the property now claimed by the defendant.

Commencing with a conveyance of the property in 1884, the descriptions in the deeds, in defendant's chain of title, are somewhat indefinite as to the land intended to be conveyed. However, in 1905 the owners of the land had it surveyed by the county surveyor and, apparently in an effort to establish a paper title to the land outside of the boundaries of block 56 and the hotel property, in 1906, there were several quitclaim deeds made, by former owners, which described the east line of the tract as running from the northeast corner of the hotel property to the northeast corner of block 56. Substantially, this description is contained in all deeds, subsequent to that deed, to the property north of the hotel property, until the property was conveyed to defendant, by a bank which got the property by foreclosure of a mortgage made to it by a former owner. The defendant's deed, dated June 18, 1920, from this bank, was the first deed to convey the exact property defendant claims. It described the land conveyed as commencing at the northeast corner of block 56, thence west on the south line of Ninth Street 94 1/2 feet to the middle of Elm Street (which had been closed south of Ninth Street), thence south 108 feet to the north line of the hotel property, thence east along the north line of the hotel property 94 1/2 feet, thence north 108 feet. It includes part of Elm Street, all of block 56, and the strip plaintiff seeks to recover. Triangular block 56 and the triangular strip plaintiff claims make a rectangle approximately 64 by 108 feet. There is another triangular strip, of the land described in the former deeds, lying on the east side of the land described in defendant's deed. This seems to have later been acquired by W. J. Delano, who used it as a tie yard. All of this tie yard and all of the land described in defendant's deed east of the east boundary line

of block 56 is claimed by the railroad, as it is all within 175 feet of plaintiff's main line track. The tie yard, of course, is not involved in this suit.

The situation is shown by the following plat.

Explanation: The top of the map is West. The various tracts of land referred to in the evidence are as follows:

A.—Part of Eighth Street before 1881.

B.—Part of Ninth Street conveyed to Railroad by city when Eighth Street was straightened and continued across the tracks.

C.—Additional land conveyed by Railroad to owner of hotel property when Eighth Street was straightened.

D.—Lot D as platted by the Railroad and conveyed to Faulkner and Graves. Diagonal line shows part conveyed to city to straighten Eighth Street.

E.—Lot E as platted by the Railroad and conveyed to Faulkner and Graves.

F.—Lot F as platted by the Railroad. One-half of Lot F was conveyed to Faulkner and Graves. The diagonal line through Lot F shows that the part of it, which was never conveyed by the Railroad, is now included in the land upon which defendant's garage was constructed in 1920.

G.—The approximate location of the Delano tie yard.

H.—The approximate location of the railroad depot which burned in 1881.

I. —The present railroad depot built after the fire of 1881.

K.—The approximate location of the garage built by defendant.

L.—The land sued for. The right of way line 175 feet from the center of the main track is indicated by the heavy black line. This shows approximately the part of defendant's garage on the land sued for. The dotted lines indicate approximately the land described in defendant's deed.

M.—The old brick livery barn (now part of the garage).

N.—The wash room built by defendant in 1927.

Note.—K. L. M. and N. are not drawn to scale and only show approximately the size of the buildings and tracts designated.

Defendant operated the brick barn as a livery barn until 1920. Then, he went into the automobile business and converted it into a garage. He built an addition, at that time, south of the old brick building 70 feet long and about 65 feet wide. This building cost about $10,000 and was a concrete and stucco structure. Most of its east wall and about half of its south wall extends over the east line of block 56 onto the land which plaintiff seeks to recover in this action. In 1927 defendant built another small addition on the east of the old brick barn, for a room for washing automobiles. The southeast corner of this building also extends over the east line of block 56 onto the land which plaintiff seeks to recover. This action was commenced shortly after this last room was built.

Defendant's answer denied plaintiff's title and set up title in defendant by adverse possession. It also alleged an estoppel against plaintiff because of allowing valuable improvements to be made on the land it now claims. Plaintiff denied these claims by reply. The court made a finding that the plaintiff's claim of title was based on the deed of January 17, 1872, from Copp, trustee, to the railroad, "conveying a strip of land situated in the city of Rolla, lying on each side of and including the road bed and depot ground, and that the land sued for by plaintiff was not included in said strip of ground so conveyed by said deed, and did not constitute a part of the road bed and depot grounds of said plaintiff." The court further found that the defendant had acquired title by adverse possession and entered judgment for defendant, from which plaintiff appeals. The

substance of plaintiff's contention, here, is that the land, occupied by defendant, was acquired for right of way and station grounds; that it was therefore appropriated to a public use; and that title to it could not be acquired by adverse possession.

Under our Constitution and statutes, use, dedication or other acquisition of land for railroad purposes is an appropriation to a public use. [Byam v. Kansas City Public Service Co., 328 Mo. 813, 41 S. W. (2d) 945.] This court has recently reviewed former cases and held in St. Louis-San Francisco Ry. Co. v. Dillard, 328 Mo. 1154, 43 S. W. (2d) 1034, that a railroad company's land acquired and held for legitimate railroad purposes is exempt from the operation of the Statute of Limitations, saying:

"Such lands are devoted to a public use, and are not lost to the owner by adverse possession under the ten-year statute of limitations (Rev. St. 1929, sec. 850) applicable to real estate generally. Such is the effect of our statutes. [Hannibal & St. Joseph R. Co. v. Totman, 149 Mo. 657, 51 S. W. 412; Kansas City & N. Connecting R. Co. v. Baker, 183 Mo. 312, 323, 82 S. W. 85; Powell v. Railroad Co., 215 Mo. 339, 352 and 358, 114 S. W. 1067.] [See, also, Bush v. Stumpe, 222 S. W. 1009.]

"Nor is this rule of law confined to the usual or standard right-of-way of railroads, but extends to lands reasonably necessary for depot and station grounds, stockyards, pens, switch and storage yards, etc. [St. Joseph, St. L. & S. F. R. Co. v. Smith, 170 Mo. 327, 332, 70 S. W. 700, 702; Kansas City & N. Connecting R. Co. v. Baker, 183 Mo. 312, 322, 82 S. W. 85.] . . .

"Nor is it necessary that such additional grounds be actually used or necessary under the then conditions for such purpose. The railroad has a right to provide for and anticipate its future growth and needs in this respect. [St. Joseph, St. L. & S. F. R. Co. v. Smith, 170 Mo. 327, 333, 70 S. W. 700; Kansas City & N. Connecting R. Co. v. Baker, 183 Mo. 312, 325, 82 S. W. 85.]"

As this court said in the Smith case and quoted approvingly in the Baker and Dillard cases, supra:

"The railroad is not cut off from its right to claim that such land is appropriated to a public use, because it had not previous to the controversy actually used it for a right-of-way, depot grounds, etc., for it was pointed out that *if the land was within the designation* the company was not obliged to *actually occupy* it until it became necessary or desirable for it to do so, and that anyone who enters upon land so owned by a railroad company and erects improvements thereon, does so at his peril, and is affected with notice of the rights of the railroad to such land, and that *no possession can be adverse to the railroad* or be made the basis of a *title by limitation* as against the

railroad, no matter how long that possession may continue.''

This being an action at law, we are bound by the findings of fact of the trial court which are supported by any substantial evidence and we cannot pass on the weight of the evidence. [Huttig v. Brennan, 328 Mo. 471, 41 S. W. (2d) 1054, and cases cited, 1. c. 1061.] However, the trial court's finding that the land sued for by plaintiff was not included in the strip of ground conveyed to the railroad by the deed of January 17, 1872, is clearly erroneous. There is no evidence upon which to base such a finding. All the evidence clearly shows that the railroad was deeded a 250-foot strip west of its main track, and that all of the land sued for is within 175 feet of it. The railroad either did not retain a 250-foot strip west of its main track or (as seems more likely) it has since located its main track 75 feet nearer the 3 1/2 acre strip, conveyed to the county, than it originally intended. There is no dispute about the east side, of the 3 1/2 acre tract, conveyed by the county and platted by it into blocks, being within 175 feet of the center of the main track of the railroad as now located, and that the land sued for is less than that distance from it. Nor is it disputed that the city is platted into blocks to within 50 feet, east of the center of its main track. There is nothing in the record to show whether or not the railroad ever, in fact, got a 300-foot strip, or if it did, what became of 75 feet of it.

It will be noted that the deed of January 17, 1872, described the strip conveyed to the railroad as ''a strip of land lying on each side of and including the *road bed and depot grounds.*'' The finding of the court, in its judgment, was that the land in question ''did not constitute a part of the *road bed and depot grounds* of said plaintiff.'' Upon that theory, the court found defendant could and did acquire title by adverse possession. The adverse possession clearly, under the evidence, did not commence until sometime after the fire of 1881. Under the above authorities, title to property appropriated for railroad purposes cannot be acquired by adverse possession commencing after August 1, 1866, when our statute, exempting such land from the Statute of Limitations, now Section 859, Revised Statutes 1929, went into effect. The finding of the court, that the land sued for did not constitute a part of the *roadbed and depot grounds,* is not sufficient to take it out of the rule that property appropriated and set apart for railroad purposes cannot be acquired by adverse possession. *Roadbed* does not mean right of way. [C. B. & Q. R. Co. v. McCooey, 273 Mo. 29, 1. c. 42, 200 S. W. 59.] The application of this rule is not limited to the property, actually occupied and used for the *roadbed* and station business, at the time the encroachment upon the railroad property, commences. The question, decisive of the matter, is whether or not the land had ever been appropriated for

railroad purposes. If so, it is exempt from bar of the Statute of Limitations. As above pointed out, this court has uniformly held that it is not necessary that the railroad should have actually used the land for its roadbed, depot grounds or other railroad purposes prior, to the controversy, in order for it to have been appropriated to such public use; that the company does not have to actually occupy or use the land until it becomes necessary or desirable to do so; and that anyone entering upon the land and erecting improvements upon it does so at his peril.

Defendant concedes the rule that a railroad right of way cannot be lost by adverse possession, but contends that it does not apply to the land in question because this land was never appropriated to public use; that is, it was never used nor intended for railroad purposes. Defendant's contention is that the railroad owned the whole 40-acre tract, deeded part of it away for buildings and residences, and that it is a question of fact where the public use ended and the private use began. If this was a question upon which there was conflicting evidence, it would be for the trial court to determine and we would be bound by its finding. The trial court apparently took this view since it gave plaintiff's declaration of law "I," stating generally the rule that the Statute of Limitations does not run against railroad right of way, but refused its declaration of law "A," applying it to the land sued for. Declaration "A" was, as follows:

"The court declares the law to be that although Defendant may have entered into the possession of the land in question and made valuable improvements thereon, yet, defendant cannot acquire title to said land by adverse possession as against the right of the Plaintiff railroad corporation to hold the same for right-of-way purposes and station grounds."

We think this was erroneous under the facts of this case. The public character of property appropriated for railroad purposes is established by Section 14, Article 12 of our Constitution. This expressly applies to all railways, whether constructed before or after its adoption. A conveyance of land for railroad right of way is a dedication to public use and the tenure of the railroad corporation is in the nature of a trust for public use, subject to the supervision of the government, whether obtained by grant or condemnation. [Venable v. Wabash Railway Co., 112 Mo. 103, 20 S. W. 493.] The manner in which the conveyances, of the 40-acre tract, were made, clearly shows what portion of it was set apart for railroad purposes and what was not. It was originally all conveyed to a trustee. The railroad was, of course, interested in having towns grow up along its route, from which it could obtain business. The trustee, who held the title, conveyed land, to the county and to individuals, for the purpose of making additions to the town and for other commercial

purposes. He retained title to the 300-foot strip, which he finally conveyed to the railroad by the deed of January 17, 1872. While this strip may have included more land than was then used for roadbed and station grounds, this conveyance undoubtedly was an appropriation of the entire strip for railroad purposes as right of way through the city for tracks, station, switchyards and other uses appurtenant to its entrance to the city. [See Chouteau v. Missouri Pacific Ry. Co., 122 Mo. 375, 22 S. W. 458, 30 S. W. 299.]

It is, no doubt, true, as this court said in the Dillard case (43 S. W. (2d) l. c. 1037), "lands owned by a railroad might be so disconnected with any reasonable use which the railroad might reasonably require" or may be "so entirely abandoned as a part of the railroad right of way, depot grounds, etc.," that the Statute of Limitations would apply. However, there is no substantial evidence that either condition existed in the case. The most that can be said, as to the land sued for, is that the railroad company narrowed the southern part of its right of way on the west side of the main track by platting lots there and deeding them away. It never parted with any of its land north of the hotel lots. The abandonment of this part of its right of way, west of its main track, could not be construed to be an abandonment of all of the rest of it, which was an equal distance from its main track.

Furthermore, it would seem that the acts of the railroad company after the fire of 1881 clearly show that the part of its right of way north of the hotel property, east of block 56, south of Ninth Street and west of its house track, was set apart for railroad use. After the fire, it relocated its depot and made a number of changes, for the purpose of obtaining more room for it and a better approach to it. By an arrangement with Mrs. Crandell, the owner of the hotel, part of the hotel property was deeded to the city, so that Eighth Street could be continued across the tracks where the old depot stood, A triangular strip of ground, south of the new location of the depot, was deeded to Mrs. Crandell, to make her hotel property the same size as it was before she conveyed, to the city, the tract necessary to straighten Eighth Street. At the same time, the city conveyed to the railroad, the part of Ninth Street, north of the new depot, within 175 feet of its main track, and the railroad moved its freight house, from the strip deeded to Mrs. Crandell, to this land formerly part of Ninth Street.

Unless it was intended to use for railroad purposes, at some time in the future at least, the property north of the hotel lot, within 175 feet of its main track, the tracks, depot, and all other station buildings would be crowded into a 125-foot strip. It is certainly not reasonable to believe that the railroad intended to so confine, for all

time, its entrance to the county seat city of Rolla. For the proper conduct of railroad business, ground is necessary, not only for actual location of tracks, depots and other buildings, but also for room for adequate approach to them for the transportation of freight and passengers to and from the railroad; room for persons and vehicles to await the coming of trains and to transact railroad business; and room, as well, for storage and for future enlargement of station buildings and the laying of more switch tracks. [See Coates & Hopkins Realty Co. v. K. C. Terminal Ry. Co., 328 Mo. 1118, 43 S. W. (2d) 817, l. c. 824.] All adverse possession claimed, here, commenced after this relocation of the depot and other changes, with this evident future purpose in view, and we hold that it was not sufficient to bar this action of plaintiff to recover the part of its right of way in question.

It may be, however, that, while plaintiff was the legal owner of all of the land sued for, the defendant has a good defense, to the recovery of the land upon which his buildings are located, upon the ground of estoppel; especially as to the part, if any, of the garage located on lot "F," evidently platted by the Railroad for commercial purposes and referred to in the Faulkner and Graves' deed. The court made no finding upon this feature of the case, but found for defendant upon the theory that he had acquired title, to all of the land claimed by plaintiff, whether built on or not, by adverse possession. The evidence as to estoppel here is stronger than that in the Dillard case. It may be sufficient to bring the case within the rule of equitable estoppel established by City of St. Joseph v. St. Joseph Terminal Railroad Co., 268 Mo. 47, 186 S. W. 1080.

The judgment is reversed and the cause remanded. *Ferguson* and *Sturgis, CC.,* concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All of the judges concur.