Leroy STRUBBERG, Ruth Ann Strubberg, James M. Strubberg, Thomas M. Strubberg, Kathleen D. Langerberg, and Julie A. Fadler, and Leroy A. Strubberg, Trustee of the Leroy A. Strubberg Revocable Living Trust U/A June 20, 1989, Plaintiffs–Respondents,

v.

Harold ROETHEMEYER and Dorris Roethemeyer and Harold Roethemeyer and Dorris Roethemeyer, Trustees of the Harold and Dorris Roethemeyer Revocable Living Trust U/A December 5, 1983, Defendants–Appellants.

No. 70150.

Missouri Court of Appeals, Eastern District, Division Four.

Jan. 21, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 17, 1997.

Application to Transfer Denied April 29, 1997.

**558**

Isidore I. Lamke, Washington, for Appellant.

David L. Baylard, Christopher W. Jensen, Briegel & Baylard, P.C., Union, for Respondent.

KAROHL, Judge.

Defendants appeal from an amended judgment in favor of plaintiffs on their four count petition and against defendants on their counterclaim. The subject of the dispute is a one and one-half acre tract of land located in Franklin County, Missouri. Leroy A. Strubberg and wife, individually and as trustees of inter vivos trusts, filed a petition against Harold Roethemeyer alleging causes of action for trespass, ejectment, an injunction against trespass and to quiet title. Dorris Roethemeyer was allowed to intervene as a party defendant. Subsequently, the defendants were identified as Harold Roethemeyer and Dorris Roethemeyer individually and as trustees of an inter vivos trust. Defendants filed a counterclaim alleging a cause of action for quiet title obtained by adverse possession of the disputed tract and a claim for malicious prosecution for filing the petition. We affirm.

The Strubbergs acquired a farm in Franklin County in 1975. They purchased the property from Paul and Luelda Holtgrewe. At the time of the purchase the Holtgrewes informed the Strubbergs that around fifty

years prior, an agreement was made by their predecessors in title to allow their neighbors to the east, the Wortemans, to use the subject one and one-half acre tract. In exchange, they were allowed to use part of the Worteman's property which was north of the subject tract and described by the parties as "bottom ground." That small parcel lies along Boeuf Creek.

There is a dispute as to the nature of the agreement. The plaintiffs offered evidence from which the court could find that the agreement was for an exchange of use. Defendants offered evidence from which the court could have found that the agreement was for an exchange of title so that the bottom ground would become owned by plaintiffs' predecessors in title and the disputed tract owned by defendants' predecessors in title. In the judgment the trial court noted "the trade which occurred years ago apparently made sense to the traders at that time. This case is a justification for the normal rule of law that land transactions must be in writing and the higher burden placed on claimants who seek to dispossess the holders of record title." In support of their argument, defendants also argue, in the alternative, that events which began in 1980 would support a judgment quieting title in defendants by adverse possession without reference to the old agreement.

The disputed tract in question contains approximately one and one-half acres. It is triangular in shape. The eastern boundary runs from the point of beginning to a point due south. From that point it extends westwardly at a ninety degree angle to the eastern boundary to a point. The northern and western points are then connected by a straight line representing the hypotenuse of a triangle. Most of the tract lies west of Beemont School Road which bisects the tract so as to separate a small triangular shaped portion of the tract which lies east of Beemont School Road.

Plaintiffs own a farm west of the disputed tract. Defendants own a farm which lies both east and south of the subject tract. There is no dispute that after the agreement of the predecessors in title users occupied the tract for fifty years before 1980. The initial dispute is whether they used the property with permission or under a claim of ownership. There was a fence erected and maintained along the western edge of the disputed tract which separated the owners farm from the tract. There was also a fence which ran along the western side of Beemont School Road which formed the eastern edge of the larger portion of the disputed tract.

The relations between plaintiffs as owners and defendants as users of the disputed tract began shortly after the Strubbergs purchased their farm in 1975. After they were informed of the old agreement, Leroy Strubberg notified Harold Roethemeyer that he would honor all prior agreements of the predecessors in title. The terms of the prior agreements were not discussed or detailed. In the fall of 1980, Leroy Strubberg informed Harold Roethemeyer that he was going to put a road across the tract to connect his land with Beemont School Road. He tore down the two fences, hired a bulldozer and began to clear the area. He also used a tractor to disc and till the property. He fertilized and planted grass for pasture for his cattle. In response, Harold Roethemeyer replaced the fences and continued to use the property. He did not, at this time, communicate a claim of ownership over the parcel or charge Leroy Strubberg with trespassing.

In the fall of 1983, Leroy Strubberg and Harold Roethemeyer exchanged letters involving the tract. Leroy Strubberg wrote that he planned to go forward with construction of a road across his property to allow new access from Beemont School Road. On August 23, 1983, Harold Roethemeyer replied and asserted that he owned the tract west of Beemont School Road and had fenced and used it continuously for fifty years. He offered to discuss an arrangement in which Leroy Strubberg could continue farming his "bottom ground." Leroy Strubberg testified that he understood the agreement regarding the two parcels of land by the predecessors in title as having nothing to do with an exchange of ownership, just an exchange of use. He also testified he knew Harold Roethemeyer was using his land and never found it to be a problem. On November 2, 1983, Leroy Strubberg, by the last letter ex-

changed between the parties, told Harold Roethemeyer that he knew very well that the old agreement had nothing to do with an exchange of ownership and that his claim of ownership based on the agreement was wrong.

Nine years and eight months after Harold Roethemeyer claimed title to the disputed tract of land in the August 23, 1983 letter, Leroy Strubberg and wife, individually and as trustees of inter vivos trusts, filed their petition to quiet title and for other relief. Harold and Dorris Roethemeyer filed a counterclaim asserting title by adverse possession and requesting malicious prosecution damages for the lawsuit. The trial court found in favor of plaintiffs. It quieted title to the disputed property in plaintiffs and sustained their request for ejectment together with an order that defendants remove themselves and their personal property from the real estate. However, the trial court also found plaintiffs failed to provide sufficient evidence to support a judgment on their claim of trespass. The trial court tried the counterclaim together with the petition but did not expressly decide the counterclaim.

Defendants only point on appeal contends the trial court erred in denying their adverse possession counterclaim. The specific assignment of error is that the judgment is against the weight of the evidence, unsupported by substantial evidence, and erroneously declares and applies the law because defendant Harold Roethemeyer proved that defendants' possession of the disputed tract was "hostile, actual, open and notorious, exclusive, and continuous for a period of ten (10) years prior to the time [the Strubbergs] filed suit on April 20, 1993." Significantly, there is no claim of error by defendants regarding the judgment on plaintiffs' petition.

■ Appeals may be taken only from a final judgment which disposes of all issues and parties in the case leaving nothing for future consideration. *Green v. City of St. Louis,* 870 S.W.2d 794, 798 (Mo. banc 1994). We will sustain a judgment as final even though the trial court never entered judgment on a counterclaim if the judgment implicitly disposes of the counterclaim. *Troske*

*v. Martigney Creek Sewer Company,* 706 S.W.2d 282, 285 (Mo.App.1986). Here, when the court granted quiet title in the plaintiffs, it necessarily disposed of the mutually exclusive adverse possession counterclaim. As such, the judgment is final and appealable and we will address the merits of the point on appeal.

■ Turning to the merits, defendants argue the trial court erred in denying their adverse possession claim concerning the disputed parcel because the evidence proved their use and possession was hostile, actual, open and notorious, exclusive and continuous for a period of ten years prior to owner's filing suit. In court-tried cases, we will not disturb the trial court's order unless it is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). We accept as true all evidence favorable to the finding and all reasonable inferences to be drawn from it, and all contradictory evidence is disregarded. *Price v. American Bank of St. Louis,* 793 S.W.2d 593, 598 (Mo.App. 1990).

■ Plaintiffs' record title for the disputed parcel is not contested. Defendants claim ownership through adverse possession. To succeed with an adverse possession claim, the possession must be: (1) hostile and under claim of right; (2) actual; (3) open and notorious; (4) exclusive; and (5) continuous for ten years prior to the commencement of the action. *Green v. Lange,* 797 S.W.2d 765, 767 (Mo.App.1990). The burden of proving these five elements is on the party claiming title by adverse possession. *Id.* The failure to prove one necessary element prevents title being granted by adverse possession. *Ross Farms, Incorporated v. Moore,* 873 S.W.2d 308, 309 (Mo.App. S.D.1994).

■ The trial court based its amended judgment for plaintiffs on the finding that the possession of the disputed parcel under the old agreement was consensual. Permissive use will not support a claim of adverse possession as hostile possession is lacking. *Id.* Plaintiffs' evidence supports the trial court's finding. Leroy Strubberg testified he

---

**561**

understood the agreement to be a swap for "use" not "ownership." At the time of purchase, the Strubbergs were made aware of the agreement by Paul Holtgrewe. He explained, on site, that the Roethemeyers were using the disputed parcel with his permission and that in exchange he was using part of their land known as the bottom ground. A few weeks after the purchase, Leroy Strubberg went to Harold Roethemeyer and said he would honor all agreements already in place between the two property owners.

Additionally, no express claim of ownership regarding the disputed property was made prior to Harold Roethemeyer's August 23, 1983 letter. When the Strubbergs began to bulldoze the disputed parcel in 1980, Harold Roethemeyer never told Leroy Strubberg to stop nor claimed the land as his own. In his deposition, Harold Roethemeyer described the agreement as a land swap which allowed him to use the disputed parcel. However, at trial, he testified he "owned the property." Also, at trial, he did not expressly agree the Strubbergs owned the "bottom ground" parcel. When there is a conflict in the evidence, the trial court determines the credibility of the witnesses, accepting or rejecting all, part or none of the testimony. *Ware v. Ware*, 647 S.W.2d 582, 584 (Mo.App. 1983). The trial court was free to accept the plaintiffs' evidence concerning the old agreement regarding the disputed parcel and the bottom ground.

In the alternative, defendants argue that even if they did not acquire title by adverse possession based on the old agreement, they acquired it during the period from 1980 until suit was filed in April of 1993. They argue that since they replaced the fences torn down by the bulldozing and continued using the property, they were asserting an interest "inconsistent with, as well as injurious to the rights of Strubbergs." However, the trial court could have found the Roethemeyers claimed no ownership interest in the property until 1983. By their actions in 1980, defendants merely continued to do what they had been doing under the old exchange-of-use agreement which was never withdrawn. " 'There must be an unequivocal claim of ownership to make the possession adverse.' " *Barton v. Pauly*, 350 S.W.2d 748, 752 (Mo.1961). Here, the Roethemeyers first unequivocally claimed ownership in a letter dated August 23, 1983. Thus, it may be agreed that a ten year period began on that date. However, it was interrupted in April of 1993 when plaintiffs filed suit. The defendants' alternative theory fails for lack of proof of a sufficient period.

Judgment affirmed.

RHODES RUSSELL, P.J., and SIMON, J., concur.