Danny **MOORE** and **E.R. Hutcheson** Respondents,

v.

**MISSOURI FRIENDS OF THE WABASH TRACE NATURE TRAIL, INC.,** Appellants.

No. WD 55781.

Missouri Court of Appeals, Western District.

April 27, 1999.

obtained title through a quitclaim deed conveying ownership from the Norfolk and Western Railway ("Norfolk") and because it and its predecessors in title acquired title to the land through adverse possession.

We find that the three deeds at issue here restricted the quantum of interest conveyed to the railroad, and did not convey that interest for valuable consideration, and thus the railroad did not receive title to the land in fee simple absolute, but rather received an easement to use the land until such time as the use for railroad purposes was abandoned. Once abandoned, title to the tracts reverted to the Respondents as the adjacent landowners. We also find that Wabash Trace's adverse possession could not have started until the land was abandoned for all railroad purposes in October 1986, and since the property owners asserted their rights of ownership by filing suit in May 1996, Wabash Trace is unable to establish the requisite 10 year period for adverse claim to the land. Judgment affirmed.

Rochelle B. Ecker, Kansas City, for appellants.

Jerold L. Drake, Grant City, for respondents.

Before Chief Judge PATRICIA BRECKENRIDGE, Presiding, Judge JAMES M. SMART, and Judge LAURA DENVIR STITH.

LAURA DENVIR STITH, Judge.

Defendant–Appellant, Missouri Friends of the Wabash Trace Nature Trail, Inc. ("Wabash Trace"), appeals from a grant of summary judgment entered on March 27, 1998, quieting title to a 100–foot strip and two 50–foot strips of land in favor of Plaintiff–Respondents, Danny Moore and E.R. Hutcheson, respectively. Wabash Trace claims the trial court erred in granting summary judgment against it because it

## I. FACTUAL AND PROCEDURAL BACKGROUND

On December 27, 1878, F.A. and L.M. Rogers granted an interest in a 100–foot strip of property to the Council Bluffs Railroad by a handwritten deed. The deed stated it was given "in consideration of the sum of one dollar and the building maintaining and operating of a railroad by the said party of the second part, its successors and assigns...." The deed restricted use of the tract to railroad purposes, providing that the grantee railroad would have rights in the property, "so long as tis used for Rail Road purposes...." Respondent E.R. Hutcheson currently owns the land adjoining this strip of land, and alleges that, for reasons set out below, the strip deeded to the railroad for railroad purposes reverted to him once use of the strip for railroad purposes ceased.[1]

1. Respondent Hutcheson owns land adjoining    the abandoned right of way in Section 32,

In January 1879, both James and Loveday Bullock, and Charles Bullock, also granted interests in 100–foot strips of their land to the Council Bluffs Railroad, "[f]or the consideration of Five Dollars to [the grantors] in hand paid and the building of a ... wire fence ... on each side of the rail road track." Both of these deeds expressly provided that the conveyance was for purposes of a railroad, and "that in case the construction of said road shall be abandoned or not pass over said land, the right to said land is to revert to the undersigned." Respondent Danny Moore is the current owner of land adjoining parts of the strips of land described in these deeds, and alleges that, for reasons set out below, the strips reverted to him once use of the strips for railroad purposes ceased.[2]

From the period after these deeds were granted until early 1984, the Council Bluffs and St. Louis Railway Company, the Wabash Railroad, and, finally, the Norfolk and Western Railway Company, operated trains over the line which ran through this land. By the early 1980's, rail transportation over the line had become unprofitable. Consequently, on June 30, 1983, Norfolk and Wabash jointly applied to the Interstate Commerce Commission ("ICC") for permission to abandon the track and discontinue service for 222.3 miles of the railroad, including the part of the line in Atchison County which is at issue here. The ICC granted this request, which became effective on December 10, 1983, and gave the railroad one year to complete its abandonment. It did so in February 1984. That same month, the Northern Missouri Railroad began operating trains over the tracks between Brunswick, Missouri and Blanchard, Iowa, including the railroad right-of-way in Atchison County. This "short-line" railroad operated from February 1984 to September 1986, when the Northern Missouri Railroad discontinued

Township 67, Range 38.

**2.** Respondent Moore owns land adjoining the abandoned right of way in Section 33, Township 67, Range 38.

its service, pursuant to permission from the ICC, because of financial problems. Norfolk removed the track and ties from this entire part of the rail corridor, including from the strips of land in question here, during the second half of 1988, completing that work by December 1988.

On June 27, 1995, Norfolk[3] executed a quitclaim deed to Wabash Trace, giving it its interest in the right-of-way, "SUBJECT, to any conditions, restrictions, reservations, licenses, leases and easements, whether or not of record." The consideration given for these deeds is unknown; the total consideration given for a quitclaim deed by Wabash Trace for this land and other land, including land located in Nodaway County, Missouri, totaled $50,-000.00. The purpose for the purchase was to extend to Maryville, Missouri a hiking and biking trail which presently runs from Council Bluffs, Iowa, south to the Iowa–Missouri line. After Wabash Trace received this quitclaim deed, its members began to clear parts of the corridor of brush and weeds and to establish a roadbed over parts of the "abandoned" right-of-way.

On May 31, 1996, Respondents Hutcheson and Moore filed this action to quiet title in the disputed tracts of land that adjoin their property. Wabash Trace answered and requested that it be declared the owner in fee simple absolute of the disputed tract. After discovery, Respondents filed a motion for summary judgment, which was sustained by the trial court on March 27, 1998. Wabash Trace appeals.

## II. STANDARD OF REVIEW

"The propriety of summary judgment is purely an issue of law which we review *de novo* on the record submitted and the law." *Bonds v. Missouri Dep't of Mental*

**3.** Norfolk has disclaimed all interest in the property at issue.

*Health,* 887 S.W.2d 418, 421 (Mo.App. 1994). We review the grant of summary judgment by looking to the entire record to determine whether there is any genuine issue of material fact and whether the moving party was entitled to judgment as a matter of law. *Dial v. Lathrop R–II Sch. Dist.,* 871 S.W.2d 444, 446 (Mo. banc 1994). We view the record in the light most favorable to the party against whom summary judgment was entered, but will affirm if the judgment is sustainable as a matter of law under any legal theory. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993).

### III. THE RAILROAD'S INTEREST IN THE PROPERTY WAS AN EASEMENT WHICH WAS EXTINGUISHED UPON ABANDONMENT

█ Wabash Trace claims that Norfolk's 1995 quitclaim deed conveyed fee simple title to all three disputed tracts to it. Specifically, as to the two Bullock deeds, Wabash Trace argues that the two original deeds of conveyance simply provided that the land would revert to the "undersigned grantor" in case the construction of the railroad was abandoned. Wabash Trace asserts that, since the railroad was built, this condition of reverter was never fulfilled. Wabash Trace also argues that, while the Rogers deed does state it is only a determinable fee so long as the property is used for railroad purposes, that restriction is not controlling here because there is no evidence that the possibility of reverter was ever conveyed to or inherited by anyone, much less to Respondents in this case.

Wabash Trace's arguments are based on the premise that the three original deeds conveyed a fee simple title to the railroad which the railroad and its successors re-

tained until the railroad formally disclaimed any interest in the right-of-way and passed its title to Wabash Trace through the 1995 quitclaim deed. Wabash Trace's arguments, however, ignore the long line of case law in Missouri addressing the types of deeds at issue here, and addressing how rights of ownership are determined once a railroad track has been abandoned. This analysis begins with an examination of the relevant statutes, which, both at the time of the deeds and now, provide that a railroad has the power:

> To take and hold such voluntary grants of real estate and other property as shall be made to it to aid in the construction, maintenance and accommodation of its railroads; **but the real estate received by voluntary grant shall be held and used for the purpose of such grant only.**[4]

█ The term "voluntary" grant has been construed to mean a conveyance without valuable consideration. *Brown v. Weare,* 348 Mo. 135, 152 S.W.2d 649, 653 (Mo.1941). If the conveyance was a voluntary grant, the effect of the statute was that the railroad acquired only an easement, no matter what interest the deed purported to convey. *G.M. Morris Boat Co. v. Bishop,* 631 S.W.2d 84, 87 (Mo.App. 1982).

█ In applying this statute and in developing the common law governing the effect of conveyances of a strip of land to a railroad, the courts of this State have consistently looked at three factors to determine whether a deed of land to a railroad passes title to the railroad in fee simple, or grants merely an easement in favor of the railroad, subject to later reversion to the grantor or his heirs if use for railroad purposes later ceases. These factors are: (1) whether the deed includes language conveying a "right of way;"[5] (2) the

---

4. (emphasis added). L. 1866, P. 27, § 2. This provision is currently found in Section 388.210(2) RSMo 1994, and is identical in all respects.

5. " 'Right of way' has been accorded two meanings in railroad parlance -- the strip of land upon which the tract is laid -- and the legal right to use such strip, (citations omit-

amount of consideration; and (3) language in the deed limiting the use of the land for railroad purposes.

■ Factor (1)—use of words granting only a "right of way"—is not applicable here since none of the three deeds refer to a right of way.[6]

The second factor the courts of this State examine is the consideration given by the railroad in exchange for the property. As stated above, the statute in effect at the time of the conveyances, the 1853 General Railroad Corporation Act, allowed railroads to take "voluntary grants of real estate." *Brown* discussed the significance of the term "voluntary" as used in the statute:

> We find there a history of the surrounding conditions which existed when Section 5128 was enacted and which is recounted in order to support the court's analysis of the term voluntary grant. This history indicates that the "quantum of consideration" of a grant to a railroad company was indeed the purpose for the act. It is apparent that the legislature intended positively to interfere in the dealings of a railroad company with the landowners and to protect the latter if the railroad was never constructed, and also if the railroad company abandoned land acquired for its use. Therefore, the term valuable consideration must have been used in the Coates case in the sense of substance rather than in its more generally understood use in the law of conveyancing. That case could not have intended that a mere nominal consideration would be adequate to con-

vert a voluntary grant as the latter term is used by the statute.

*Brown*, 152 S.W.2d at 654.

■ Later cases have similarly interpreted use of the term "voluntary grant" to mean that the railroad must give valuable rather than mere nominal consideration in order to acquire a fee simple interest. *G.M. Morris Boat Co.*, 631 S.W.2d at 87. *See also Nigro v. Ashley*, 690 S.W.2d 410 (Mo.App.1984) (holding that in order to convey title in fee simple absolute to a railroad, the land must be conveyed for valuable consideration). "The fact that the consideration was [only] nominal standing alone may be sufficient to invalidate a deed." *City of Columbia v. Baurichter*, 729 S.W.2d 475, 480 (Mo.App. 1987).

The third factor courts consider in determining whether a grant is in fee simple or only for an easement is whether the deed contains language that restricts the railroad's use of the land. In *Brown*, the original landowners conveyed a strip of land by a deed which provided that the grantors, "do hereby sell, convey ... the right of way for said Railroad [100] feet in width .... [t]o have and to hold the same for all the uses and purposes of said railroad company so long as the same shall be used for the construction, use and occupation of said railroad...." The court held that the deed granted only an easement because of the use of the words 'right of way' *and also because of the provision limiting the use of the land for railroad purposes.* *Brown*, 152 S.W.2d at 652.[7]

---

ted); but where the interest conveyed is limited to right of way or for right of way the estate conveyed is an easement only." *Schuermann Enterprises, Inc. v. St. Louis County*, 436 S.W.2d 666, 669 (Mo.1969).

6. "The law is settled in this state that where a railroad acquires a *right of way* whether by condemnation, by voluntary grant or by a conveyance in fee upon a valuable consideration the railroad takes but a mere easement over the land and not the fee." *Brown*, 152 S.W.2d at 652. *See also State ex rel. State*

*Highway Commission v. Griffith*, 342 Mo. 229, 114 S.W.2d 976, 980 (Mo.1937) (holding, "a conveyance of land to a railroad company for right of way purposes only, irrespective of the consideration, passes only an easement").

7. *Accord, State ex rel. State Highway Comm'n v. Griffith*, 342 Mo. 229, 114 S.W.2d 976, 977 (Mo.1937) (holding that where a deed contained the words "grant, bargain and sell, convey and confirm unto ... as and for a right of way for said railway"... the deeds were general warranty deeds except for the

See also Quinn v. St. Louis–San Francisco Ry. Co., 439 S.W.2d 533, 535 (Mo. banc 1969) (conveyance specifically limiting the use of property for railroad purposes caused deed to convey only an easement, and fact deed contained reverter clause, "did nothing more than fix the period of nonuser [sic] which would cause the interest of the railroad in the property to terminate").

In *Jordan v. Stallings*, 911 S.W.2d 653, 657 (Mo.App.1995), landowners conveyed land to the railroad by a deed reciting that the grantors, "being desirous for the construction of said Railroad as well [sic] in consideration of the premises as of the sum of five dollars ... by these presents do grant, bargain, sell, alien, remise, release, convey and confirm" to the railroad "by full covenant of warranty" for "complete operation of said Railroad the *Right of Way* for the same over the following tract...." Based on the principles set forth in the above cases, *Jordan* concluded that the deed in question conveyed only an easement and was not a fee. *Id.* at 658, citing *Brown*, 152 S.W.2d at 652; *G.M. Morris Boat Co.*, 631 S.W.2d at 88.

Applying factors (2) and (3) here, we note that the Rogers deed purported to convey an interest in the property, "in consideration of the sum of one dollar and the building maintaining and operating of a railroad by the said party of the second part, its successors and assigns...." The deed also restricted use of the property to railroad purposes, providing that the grantee railroad would have rights in the property, "so long as used for Rail Road purposes...." In *Brown* and *G.M. Morris Boat Co.*, the deeds recited consideration of one dollar with no other evidence

of consideration. The courts in those cases held that one dollar was not substantial consideration and that the deed constituted a voluntary grant within the statute. *Brown*, 152 S.W.2d at 654; *G.M. Morris Boat Co.*, 631 S.W.2d at 88. Here, also, we find that the one dollar of consideration for this deed was merely nominal rather than valuable, and the deed restricted the use of the land. For both of these reasons, only an easement was granted.

The Bullock deeds similarly described the tracts as being deeded, "[f]or the consideration of Five Dollars to [the grantors] in hand paid and the building of a ... wire fence...." [8] Both of these deeds also expressly provided that the conveyance was for purposes of a railroad, stating "that in case the construction of said road shall be abandoned or not pass over said land, the right to said land is to revert to the undersigned."

■ These deeds, like those set out above, recite only nominal, rather than valuable consideration under the grant. Moreover, both Bullock deeds clearly stated the land was conveyed for construction of the railroad, and provided for a reversion in the event the limitation ceased being complied with. While, here, the railroad was constructed, as noted above, it is, "[t]he expression or limitation of the use to which the property is to be put is a decisive factor in construing whether a fee or an easement was conveyed." *Jordan*, 911 S.W.2d at 657. In order for a railroad to take property in fee simple absolute the land must be conveyed, "for valuable consideration and no limitation on the quantum of the interest conveyed may appear in the deed by which title is transferred." *Id.* [9] In accord with the principles set out

language, "as and for a right of way for said railway," and therefore, the only interest actually conveyed was an easement). *See also Schuermann Enterprises*, 436 S.W.2d at 667.

8. We note that the requirement the railroad build a wire fence along side the railroad tracks was apparently to avoid injury to either the railroad or the property owner by keeping

cattle and other livestock from straying onto the track and being killed. The fence was not given to the property owner, and thus is arguably not consideration at all, but simply a condition of sale to avoid injury.

9. *See also City of Columbia v. Baurichter*, 729 S.W.2d 475, 480 (Mo.App.1987) (holding where there was nominal consideration to-

above, we thus find that the three deeds at issue here restricted the quantum of interest conveyed to the railroad, and did not convey that interest for valuable consideration, and thus were voluntary grants as contemplated by the statute. For these reasons, the railroad did not receive title to the land in fee simple absolute, but rather received an easement to use the land until such time as the use for railroad purposes was abandoned.

Such abandonment occurred here. Specifically, the Norfolk and the Wabash Railroad Companies obtained a certificate of abandonment from the ICC in 1983, and abandoned the track in 1984. The Northern Missouri Railroad, a "shortline" railroad, organized and operated trains over the corridor from 1984 until late 1986. After the Northern Missouri Railroad discontinued its service, Norfolk removed the track and ties from the entire rail corridor during the second half of 1988.

■ "When a railroad ceases to use for railroad purposes property over which it has an easement, the original owners or their grantees thereafter hold the property free from the burden of the easement," and, "in the absence of contrary evidence, title to the fee is presumed to be in the abutting land owners to the center of the way." *G.M. Morris Boat Co.*, 631 S.W.2d at 88, *citing Brown*, 152 S.W.2d at 654–655; *Springs v. Cantrell*, 539 S.W.2d 318, 320 (Mo.App.1976). "Abandonment is proven by evidence of an intention to abandon without an intention to again possess it." *Boyles v. Mo. Friends of the Wabash Trace*, 981 S.W.2d 644, 648 (Mo.App.1998). The abandonment clearly occurred either in 1986, when all railroad operations ceased, or in 1988, when the track was pulled up. Once abandoned, title to the

tracts reverted to the grantees of the original owners, free from the burden of the easement.

■ Wabash Trace also argues that, to the extent the precedent set forth above would place title back in the property owners, it should no longer be followed. Wabash Trace contends that the greater social good is now in maintaining the land corridors for future rail technology, while preserving them as linear greenways for environmental and wildlife conservation. Without addressing the merits of Wabash Trace's intentions, we note that we are without authority to disregard the established case law that has developed in regard to railroad land grants. Arguments for a change in policy must, rather, be addressed to the Supreme Court or to the legislature.[10]

## IV. APPELLANTS FAILED TO ESTABLISH ADVERSE POSSESSION OF THE DISPUTED TRACTS

■ Alternatively, defendants claim ownership of the land in dispute because they and their predecessors in title acquired title to the land through adverse possession. In order to succeed with an adverse possession claim, a claimant must show that his or her possession is: (1) hostile and under claim of right; (2) actual; (3) open and notorious; (4) exclusive; and (5) continuous for ten years prior to the commencement of the action. *Strubberg v. Roethemeyer*, 941 S.W.2d 557, 560 (Mo.App.1997). *See also Green v. Lange*, 797 S.W.2d 765, 767 (Mo.App.1990). The burden of proving each of these five elements is on the party claiming title by adverse possession, and the failure to prove any necessary element prevents title being

gether with an expression in a deed that it was given for right of way purposes, the deed did not transfer an interest in fee simple).

10. *See Schuermann Enterprises*, in which the Supreme Court responded to arguments that the reasons for limiting railroads in their acquisitions no longer exist because conditions

have changed since the days of overreaching of landowners by railroads. The court held that, "a definite policy has been established in this state which particularly controls the nature and extent of the interest of railroads in real estate." 436 S.W.2d at 669.

granted by adverse possession. *Strubberg,* 941 S.W.2d at 560. The ten years of possession must be consecutive years, but need not be the ten years just prior to the filing of the law suit. *Kitterman v. Simrall,* 924 S.W.2d 872, 876 (Mo.App.1996). A claimant is able to tack its adverse possession onto the time its grantors were in adverse possession of the land. *Id.*

Wabash Trace argues the following facts establish its claim by adverse possession:

1.) The evidence by affidavit is that the railroad abandoned the corridor in 1983;

2.) During the period of time of over ten (10) years after 1983, the defendant-appellant and its predecessors in title claimed the land by:

(a) Using the land for a short line railroad from 1984–1986;

(b) Cutting weeds and caring for the corridor;

(c) Paying taxes on corridor;

(d) Insuring the land corridor as owner against risk to protect users;

(e) Paying $50,000.00 in consideration for a quit-claim deed to the corridor.

The record shows that Wabash Trace made a hostile, open and notorious claim of right to the land once it obtained the quitclaim deed from Norfolk in June 1995. By its own admission, however, Wabash Trace did not begin cutting weeds or caring for the disputed tract until that time. In addition, the only evidence presented by Wabash Trace regarding the payment of taxes and premiums for liability insurance on the property indicates such payments were made by it after June 1995. Wabash Trace failed to provide any evidence that these activities were undertaken by persons other than the adjacent property owners at any time between abandonment and its receipt of the quitclaim deed in 1995. Moreover, once Respondents learned of Wabash Trace's claims to the land, they acted in a manner consistent with ownership and filed an action to quiet title in May 1996. Thus, Wabash Trace's own actions in regard to the land are insufficient to establish its title to the land by adverse possession. To succeed in a claim for adverse possession, it must tack on to its actions those of its predecessors in title.

Wabash Trace argues that when Norfolk stopped using the tract for railroad purposes in 1983 or 1984, use for railroad purposes ended and, if the land was held by Norfolk only as an easement and not in fee, that is when any reversion occurred, and when any adverse possession claim would have begun to run.

We recently rejected a similar argument in *Boyles v. Mo. Friends of the Wabash Trace Nature Trail,* 981 S.W.2d 644 (Mo. App.1998),[11] holding that, while a railroad right-of-way is being used for any railroad purposes, it cannot be lost "by adverse possession under the ten-year statute of limitations applicable to real estate generally." *Id.* at 650–51, *relying on, St. Louis–San Francisco Ry. Co. v. King,* 329 Mo. 1203, 50 S.W.2d 94, 98 (Mo.1932). We held there that the short line railroad's use of the land at issue from 1984–1986 constituted use for railroad purposes and thus could not be considered in determining whether 10 years of adverse possession was shown. *Boyles* further held that the earliest the adverse possession period could have commenced was when the Northern Missouri Railroad ceased using the land for its short line railroad in October 1986. *Id.* The property owners began

---

11. The issues decided in *Boyles* are similar to the issues we are presented here. In that case, Wabash Trace appealed from a decision of the Circuit Court of Nodaway County quieting title to segments of the same abandoned railroad in favor of adjoining landowners in Nodaway County, Missouri. The strips of land at issue there, however, were granted by condemnation rather than by a "voluntary conveyance" in a deed. In *Boyles,* we held that the railroad had abandoned the right of way, that fee simple title reverted back to the adjacent landowners, and that Wabash Trace did not acquire title to the property at issue there by adverse possession. 981 S.W.2d at 650–51.

exerting ownership rights over the land in 1994, some eight years later. We found that this exercise of property rights by the adjacent property owners prevented Wabash Trace from showing the required 10 years of adverse possession, for, "the true owner of land may interrupt an adverse possession by reentry under circumstances showing an intention to assert dominion against the adverse user." *Boyles,* 981 S.W.2d at 651, *citing Metro. St. Louis Sewer Dist. v. Holloran,* 756 S.W.2d 604, 606 (Mo.App.1988).

Similarly, here, Wabash Trace's adverse possession could not have started until the land was abandoned for all railroad purposes in October 1986. Because the property owners asserted their rights of ownership in the land no later than May 1996, when they filed suit against Wabash Trace, Wabash Trace is unable to establish the requisite 10 year period of adverse claim to the land. Thus, without addressing whether the other elements of adverse possession were proven, we hold that Wabash Trace's claim of adverse possession must fail as a matter of law.

For the reasons stated above, we affirm.

Chief Judge PATRICIA BRECKENRIDGE and Judge JAMES M. SMART, Jr., concur.