Gill **KITTERMAN**, et ux., Appellant,

v.

Delma L. **SIMRALL**, Respondent.

No. WD 51087.

Missouri Court of Appeals,
Western District.

June 18, 1996.

Rehearing and Motion to Correct Opinion
Denied July 30, 1996.

Joel B. Laner, Kansas City, for Appellant.

John Hise Norton, Kansas City, for Respondent.

Before FENNER, C.J., P.J., and LOWENSTEIN and SMART, JJ.

LOWENSTEIN, Judge.

This is an appeal culminating from a prolonged dispute between next door neighbors. Neighborhood acrimony arising out of responsibility for barking dogs and the taking of sides in an unrelated property line dispute involving the plaintiffs played a good part in prompting this suit, its length, and its complications. If there is any moral to the case it is that many fences do not good neighbors make. The appellants, Mr. and Mrs. Kitterman (Kitterman) brought their suit for ejectment, trespass and to quiet title against the adjoining homeowner to the west, Ms. Simrall (Simrall). The respondent Simrall's counterclaim for adverse possession and trespass carried the day.

An eight to nine foot wide by approximately one hundred thirty to one hundred forty foot long rectangular strip of land between their houses is in dispute. Kitterman had a survey done in November 1991 and claims ownership to that survey line, the westernmost boundary of the disputed rectangle. A not-to-scale map is now presented.

N
↑
W← →E
↓
S

Survey → X
Property X
Line X
X
X
New Chain→ X
Link Fence X
Placement X
X
X
X
↑ X
130.81' X
↓ X
X
X
X
X
X
X
X
X

LOT 51
SIMRALL PROPERTY

Survey →
Property
Line

↓ Old Chain Link Fence
●
← Property Line
per the Court

●

●

●

●

Elm
Tree ●

●

LOT 52
KITTERMAN PROPERTY

← Wooden
Split-rail
Fence

.← Line Extended from Old
. Chain Link Fence

← Property Line
Per the Court

| Survey Property Line
X New Chain Link Fence
‖ Property Line Per the Court          ← 5'9"→ ‖
● Old Chain Link Fence                 ← 9.17' →
◘ Split-Rail Fence
. Line Extended from Old Chain Link Fence

After extensive discovery, a two day trial to the court involving numerous exhibits and witnesses, including the predecessors in title to both the Kitterman and Simrall tracts, and upon wildly divergent testimony, the court found Simrall had met the burden as to adverse possession on much of the disputed strip.

The boundary dispute is generally in two parts, north of the elm tree and south of the

tree. The elm tree trunk is on the Simrall side of the old chain link fence, though the branches overhang both lots. The judgment on review set the new ownership boundary along the old chain link fence north of the tree and generally running to the south in a line with the wooden split-rail fence erected by Simrall. Simrall purchased lot 51 in September 1977. Kitterman bought lot 52 in May 1985.

The trial court judgment found for Simrall on her adverse possession theory and ejected Kitterman from the survey line back to even with the old chain link fence for the boundary north of the elm tree. For the area south of the tree, the court set the line basically along the wooden split-rail fence, some five feet, nine inches east of the survey. The wood split-rail fence was judged to be on the Kitterman side of the boundary line and was to be removed by Simrall. The court awarded Kitterman $1,200 in damages for trespass and $3,100 in damages to Simrall. Only Kitterman has appealed. Review is under *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc.1976).

■　For someone in Simrall's position to establish title by adverse possession, they must prove by a preponderance of the evidence under each of the following elements their possession was: 1) hostile and under a claim of right; 2) actual; 3) open and notorious; 4) exclusive; and 5) continuous for a period of ten years. *Vecchiotti v. Tegethoff,* 745 S.W.2d 741, 743 (Mo.App.1987); *Witt v. Miller*, 845 S.W.2d 665, 667 (Mo.App.1993). These possessory elements are further defined as follows: 1) Hostile means a possession antagonistic to claims of all others, with an intent to occupy as one's own. *Walker v. Walker,* 509 S.W.2d 102, 106 (Mo.1974); *Witt v. Miller*, 845 S.W.2d at 668. Under the "hostile" element, even if the possessor mistakenly believed he had title and occupied the land as his own, the element is satisfied; i.e., he must intend to occupy as his own and there is no requirement for adverse possession that he be holding title to take away from a true owner. *Walker,* 509 S.W.2d at 107. 2) "Open and Notorious is satisfied by visible acts of ownership exercised over the premises," such as maintaining and improving the property. *Witt,* 845 S.W.2d at 668 (citation omitted). 3) Actual is determined

by the nature and location of the property and a use by the possessor based upon and expected therefrom, including planting and mowing of grass. *Id.* 4) Exclusive possession means the claimant holds the land for the claimant only and not for another, for example using the land as his or her own backyard and not allowing others to so use the property. *Id.* at 667. 5) The ten years of possession must be consecutive years and need not be the ten years just prior to the filing of the law suit, but once the period has run, the possessor is vested with title and the record owner is divested. *Barnhart Properties, Inc. v. Carver,* 891 S.W.2d 880, 882 (Mo.App. 1995). The claimant is able to tack his or adverse possession on to the time of their grantors. *Teson v. Vasquez,* 561 S.W.2d 119, 132 (Mo.App.1977).

■　Adverse possession presents mixed questions of law and facts, and the principles or elements to prove such a case are viewed with the view that every property is unique. "Each case must be decided in light of its own unique circumstances. Much depends on the location, the character and the use to which the land in question may reasonably be put." *Id.* at 125 (citations omitted).

For the area north of the elm tree, the evidence established that from the 1970s, either Simrall or her predecessor had taken care of the strip west of the old chain link fence by raking, fertilizing, spraying and mowing. Simrall moved onto the property in 1977. The old chain link fence had been erected by Kitterman's predecessor in 1974. It was torn down by Kitterman in February 1992, just after the December 1991 filing of his suit, but well in advance of the August 1994 trial. Again, without warning, in 1992 he erected the new chain link fence. This act effectively cut off seventy-eight year old Simrall's eastern access to that portion of her backyard, and this act formed the basis for the trespass damages from which Kitterman now seeks relief. Kitterman had a survey performed which showed the line to be the westernmost line on the map. In any event, the court specifically found for Simrall, believing the land up to the old chain link fence belonged to her, and that she provided the only care for the land up to the old chain link

fence from 1977 until Kitterman tore that fence down in 1992.

For the area south of the elm tree, Simrall was advised by the prior owner the boundary extended on a line from the old chain link fence or roughly the eastern part of the elm trunk. The defendant Simrall built the wooden split-rail fence in April 1980. As the reader will note from the map, the split-rail fence did not comport with what she thought she owned, as it was inside a line extended from the tree trunk. Nevertheless, she cared for the land only to the fence, and it is only to the extended split-rail fence line the court found the elements of adverse possession. (Technically, the court required Simrall to remove and replace the split-rail fence). After Kitterman moved in during May 1985, Simrall repaired the fence in April 1987. Simrall testified that in 1980 she told the prior owner of Kitterman's lot she was building the fence to line up with the then old chain link fence (which it did not, but in fact was about four feet to the west), and that she maintained the land west of the fence since 1980. From 1985 through 1990, Kitterman had the elm tree sprayed for disease. From 1985 on, Kitterman took care of the area east of the split-rail fence.

## I.

Kitterman's first point alleges that changes in Simrall's claims as to the precise definition of the disputed area kept Kitterman from adequately trying his suit and allowed Simrall to introduce evidence as to portions of the land which she had not claimed. Referencing the map, it should be remembered that Kitterman filed this suit to declare the property line between the two lots was congruent with the recently completed survey. Simrall's counterclaim was for adverse possession, and although there were numerous amendments, suffice it to say Simrall sought a judgment of adverse possession further to the east than she obtained, or toward Kitterman's house. There was little doubt from Kitterman's evidence and trial strategy that he believed Simrall sought territory to the south of the elm tree all the way to the line which represented an extension of the old chain link fence (total of 9.17 feet).

She also made claim to the split rail fence (5.9 feet), and again, the court's judgment was just inside that line. Contrary to his contention, Kitterman had a sufficient description of the land claimed adversely by Simrall. *Teson v. Vasquez*, 561 S.W.2d at 127, requires an exact location of the property claimed, so the land can be identified sufficiently to support a judgment. In *Teson*, a 75 acre strip in a floodplain was at issue. Here, the land at issue was clearly located and defined. As can best be discerned, Rule 55.33(b) is not implicated, *Jefferson v. Bick*, 872 S.W.2d 115, 120 (Mo.App. 1994), as Simrall's various amendments to her counterclaim laid claim to the land in question, so evidence received as to her actions on those portions was relevant to the issue framed, and no error resulted.

## II.

The next issues raised are variations on the theme of Simrall's failure to prove the first element of adverse possession—that Simrall's possession was not hostile nor made under a claim of right.

## A.

Relying on language from *Teson v. Vasquez*, 561 S.W.2d at 127, *Ortmeyer v. Bruemmer*, 680 S.W.2d 384, 393 (Mo.App. 1984), and *City of Gainesville, v. Gilliland*, 718 S.W.2d 553, 562—63 (Mo.App.1986), Kitterman asserts that an adverse possession suit cannot be sustained unless the claimant can establish the precise boundaries of the property claimed, and absent such proof, the judgment is void and rests on speculation and conjecture. This statement of law is correct. However, as noted earlier, adverse possession claims are unique and each case pivots on its own facts, including the nature and location of the property. The factual situation in *Gainesville* explains the language about requiring a precise location and boundaries of property claimed adversely. There, without surveys or any evidence beyond crude sketches, the location of a rather large tract being claimed was rural ground by a fence near an airport runway. In the case at bar, the location of the claimed property was not in question, nor was there any difficulty

for the trial court in establishing definite boundaries to the portion adversely possessed. The only question here was that the claimant had prayed for more land than she ultimately was awarded. The precise area she claimed was readily ascertainable. In any event, if the evidence establishes all five elements, and the location in the judgment is less than precise, then the proper course of action is to remand for further evidence on that question. *Longbottom v. Rains*, 632 S.W.2d 525, 527 (Mo.App.1982). Here, neither reversal nor remand to define is necessary.

### B.

■ The next assertion is that Simrall's actions, such as mowing and fertilizing and raking the strip of ground "... did not rise to the level of acts of dominion needed to satisfy the element of hostility." *Vecchiotti*, 745 S.W.2d at 744. Kitterman recognizes the "acts which establish ... possession vary from case to case and the nature of the area in question and the surrounding property." *Denton v. Ipock*, 652 S.W.2d 290, 292 (Mo. App.1983).

In the case at bar, the contested land is a nine foot strip between two residences which already contained sizable front, back and side yards. Simrall was advised by her predecessor and the predecessor of Kitterman's property that she owned the area to the existing chain link fence. *Cf. Curran v. Bowen*, 753 S.W.2d 940, 944 (Mo.App.1988). She continued in that belief and took care of what she believed to be an area of her back yard until the unilateral action of Kitterman in tearing down and erecting a new fence to the west, in line with the just-completed survey. From the area of the tree to the front part of the lot, she likewise believed the line was even with the tree or an extension of the chain link fence. She erected a wooden fence, and with knowledge of her neighbor five years later, repaired the fence. This point is denied.

### C.

■ The remaining issues under this point are condensed and summarized. The gist of the contentions is Simrall's claim of right was equivocal because she presented different boundary claims which made her possession to not be hostile and under a claim of right. This argument is much the same as was covered in point I. The findings of fact as made by the trial court on this first element of adverse possession were supported. Evidence contrary to those findings, different claims within the nine foot strip, or a prior statement that Simrall believed she owned what was given to her in her deed, do not under review detract from the conclusion that Simrall satisfied the element of a hostile possession under a claim of right. There was no evidence Simrall used the land now titled to her under the consent of Kitterman or the prior owner. *Gage v. Townsend*, 846 S.W.2d 769, 770 (Mo.App.1993).

### III.

■ The last point relates to the $3100 in trespass damages awarded to Simrall. This amount represented some $3 a day for Simrall not being able to access her back yard from the Kitterman side, because of the erection of the new chain link fence. The point is made that at best a technical act of trespass resulted and damages should be in the nominal amount of $1. *Vecchiotti*, 745 S.W.2d at 744—45. Kitterman quotes language from *Sperry v. ITT Commercial Finance Corp.*, 799 S.W.2d 871, 878 (Mo.App. 1990), of the proper measure of damages for trespass being the difference in the value of the property immediately before and immediately after the trespass. When the property can be restored at a cost less than diminution in value, cost of restoration is then the proper measure. *Assemblies of God v. Hendricks*, 807 S.W.2d 141, 147 (Mo.App.1991). Kitterman states the property in question was not damaged, so the only award could be for the technical trespass.

■ "A trespasser is liable for damages for the natural, necessary, direct, and proximate consequences of his wrongful act." *Moore v. Dudley*, 904 S.W.2d 496, 499 (Mo. App.1995) (citation omitted). This liability exists whether or not done in good faith and with reasonable care, in ignorance, or under mistake of law or fact. *Crook v. Sheehan Enterprises, Inc.*, 740 S.W.2d 333, 336 (Mo.

App.1987). The defendant-parishioners in *Assemblies of God* erected a fence which they believed marked the boundary line. The fence had no gates and obstructed passage between the church and the parsonage. The Southern District noted the fair rental value, when the owner has been deprived of the land, is an appropriate figure for trespass damages. 807 S.W.2d at 147. Kitterman's blocking access to the Simrall property amounted to actual damage and this court cannot say the amount was improper. This point is denied. The judgment is affirmed.

All concur.