Carroll Lee and Mary **BOYLES,**
et al., Respondents,

v.

**MISSOURI FRIENDS OF THE WA-
BASH TRACE NATURE TRAIL,
INC., et al., Appellants.**

No. WD 56125.

Missouri Court of Appeals,
Western District.

Nov. 17, 1998.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 22, 1998.

Application for Transfer Denied
Jan. 19, 1999.

Jerold L. Drake, Stephens, Drake & Larison, Grant City, for appellants.

Rochelle B. Ecker, Stinson, Mag & Fizzell, P.C., Kansas City, John Thomas Crawford, III, Missouri Farm Bureau, Jefferson City, for amicus curiae for respondents.

Before ULRICH, P.J., and SMART, J., and EDWIN H. SMITH, J.

ULRICH, Presiding Judge.

Appellant, Missouri Friends of the Wabash Trace Nature Trail, Inc. (Wabash), appeals the trial court's order granting summary judgment in favor of Carroll Lee and Mary A. Boyles and other landowners[1] (Landowners) in Landowners' action to quiet title to a 100–foot strip of land in Nodaway County formerly used as a railroad right-of-way and in Wabash's counterclaim for waste against the Boyles. Wabash contends that the trial court erred in granting summary judgment to Landowners on Landowners' action and on its counterclaim because (1) after purchasing the land in 1995 from Norfolk and Western Railway Company, it continued to use the land for rail or transportation purposes; (2) Landowners were not the original owners, heirs, or grantees of owners from whom the property was taken by condemnation in 1879, and the deeds by which Landowners acquired their land excluded the land corridor from the legal description; and (3) it and its predecessors in title acquired title to the land through adverse possession for a period of over ten years. The judgment of the trial court is affirmed.

## Facts

In 1879, the Council Bluffs and St. Louis Railroad Company instituted condemnation proceedings in Nodaway County Circuit Court against a group of Nodaway County landowners. In the condemnation proceedings, the railroad company sought to condemn the strip of land at issue in this case as a right-of-way for a future railroad. Three court-appointed commissioners assessed the damages to be sustained by the landowners as a result of the establishment, erection, and maintenance of the railroad, and the circuit court condemned the strip of land for railroad right-of-way purposes.

For more than one hundred years, three railroad companies operated trains over the

1. Eldon L. and D. Jane Buesing; Joan M. Freeman; Dorothy F. Fuller, Welton A. Wallace, Richard E. Wallace, and Carol Bears; David L and Gail D. Gast; Gary W. and Judith D. Tibbetts; Donald Paul McClain and Emily Joan McClain, as Trustee of the McClain Family Trust dated November 20, 1996; Martin M. and Ethel M. Morrison; R.C.N., Inc.; S & S Farms, Inc.; Robert F. and Phyllis Scott, as trustees of the Robert F. Scott and Phyllis P. Scott Living Trust Agreement dated September 28, 1995; Dorothy Spire, as Trustee of the Dorothy A. Spire Revocable Living Trust under Trust Agreement dated May 24, 1994; Sur-gro Plant Food Co., Inc.; and William F. and Cornelia L. Yates.

rail corridor. In June 1983, the Norfolk and Western Railway Company (Norfolk), as lessee and operator of the line of railroad, and the Wabash Railroad Company, as owner of the line, jointly applied with the Interstate Commerce Commission (ICC) for permission to abandon and discontinue operation of the railroad line. The railroad companies cited several reasons to support their application for abandonment: (1) the significant financial liability caused by operating the line; (2) the poor condition of the track structure; and (3) the decreasing demand from shippers. In November 1983, the ICC found that "present and future public convenience and necessity" permitted the abandonment and discontinuance of operations of the line by the companies. In accordance with its findings, the ICC issued a certificate of abandonment in December 1983 authorizing such abandonment and discontinuance of operations to be consummated within one year. In February 1984, Norfork notified the ICC that such abandonment and discontinuance was complete.

The same month, the Northern Missouri Railroad, a local short-line railroad company, began operating trains over the tracks between Brunswick, Missouri, and Blanchard, Iowa, which included the railroad right-of-way in Nodaway County. The railroad company soon experienced financial difficulties, however, and in October 1986, it discontinued service over the rail corridor. Subsequently, Norfolk removed the bridges, ties, and rail from the entire corridor in the second half of 1988, completing the work by December 1988.

In February 1991, Missouri Friends of the Wabash Trace Nature Trail, Inc. offered Norfolk $13,000 for a quit claim deed conveying 25.6 miles of the corridor between Maryville, Missouri, and Blanchard, Iowa. Wabash proposed to extend the Wabash Trace Nature Trail, which originated in Council Bluffs, Iowa, over the corridor for use as a hiking, biking, cross-country skiing, and nature trail. In April 1993, Wabash increased its offer for purchase of the 25.6 mile section of corridor to $50,000. Finally, in June 1995, Wabash purchased the corridor from Norfork for $50,000.

In the meantime, Carroll Lee Boyles bulldozed a portion of the former railroad right-of-way that adjoined his property in March 1994. Between 1994 and 1996, he also mowed the grass, removed dead trees, and built fences on the right-of-way. In May 1996, counsel for Wabash sent the Boyles a letter concerning the former right-of-way adjoining the Boyles' property. In the letter, Wabash claimed to own the former right-of-way by virtue of its quit claim deed from Norfolk and planned to construct and maintain a nature trail on the land.

Landowners filed their petition to quiet title in the sections of the former right-of-way that adjoined their property. Wabash filed a counterclaim against the Boyles for alleged waste in connection with Mr. Boyles's actions on the property from 1994 to 1996. After several months of discovery, Landowners moved for summary judgment on their petition and Wabash's counterclaim. Wabash opposed the motion and filed its own motion for summary judgment. Following briefing and arguments in the case, the trial court granted Landowners' motion for summary judgment and denied Wabash's motion finding that pursuant to Article I, section 26 of the Missouri Constitution, Landowners are the owners in fee simple absolute and are entitled to possession of the section of the corridor adjoining their land. This appeal followed.

On appeal, Wabash claims that the trial court erred in granting summary judgment in favor of Landowners on their petition and its counterclaim. It argues that it, rather than Landowners, owns the strip of land because (1) after purchasing the land in 1995 from Norfolk and Western Railway Company, it continued to use the land for rail or transportation purposes; (2) Landowners were not the original owners, heirs, or grantees of owners from whom the property was taken by condemnation in 1879, and the deeds by which Landowners acquired their land excluded the land corridor from the legal description; and (3) it and its predecessors in title acquired title to the land through adverse possession for a period of over ten years.

Appellate review of the grant of summary judgment is *de novo*. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The record is reviewed in the light most favorable to the party against whom judgment was entered, according that party all reasonable inferences that may be drawn from the record. *Id.*

Summary judgment will be upheld on appeal if the movant is entitled to judgment as a matter of law and no genuine issues of material fact exist. *Id.* at 377. Facts contained in affidavits or otherwise in support of a party's motion are accepted as true unless contradicted by the non-moving party's response to the summary judgment motion. *Id.* at 376. For a claimant to establish a right to judgment as a matter of law, the claimant must show that there is no genuine dispute as to those material facts upon which the claimant would have the burden of persuasion at trial. *Id.* at 381.

Once the movant has established a right to judgment as a matter of law, the non-movant must demonstrate that one or more of the material facts asserted by the movant as not in dispute is, in fact, genuinely disputed. *Id.* The non-moving party may not rely on mere allegations and denials of the pleadings, but must use affidavits, depositions, answers to interrogatories, or admissions on file to demonstrate the existence of a genuine issue for trial. *Id.; Reeves v. Keesler,* 921 S.W.2d 16, 19 (Mo.App. W.D.1996).

## I. Abandonment of Railroad Right–of–Way

■ A railroad may hold, purchase, or convey the fee in land when acquired by general warranty deed without restriction on the quantum of title conveyed and for valuable consideration. *Quinn v. St. Louis–San Francisco Ry. Co.*, 439 S.W.2d 533, 535 (Mo. banc 1969); *Schuermann Enter., Inc. v. St. Louis County,* 436 S.W.2d 666, 668 (Mo. 1969); *Bayless v. Gonz,* 684 S.W.2d 512, 513 (Mo.App. E.D.1984). Where the acquisition is for right-of-way only, however, whether by condemnation, voluntary grant, or conveyance in fee upon valuable consideration, the railroad takes only an easement over the

land and not the fee. Mo. Const. art. I, § 26; *Brown v. Weare,* 348 Mo. 135, 152 S.W.2d 649, 652 (Mo.1941); *Quinn,* 439 S.W.2d at 534 (citing Mo. Const. art. II, § 21, the predecessor of art. I, § 26); *Schuermann,* 436 S.W.2d at 668; *Bayless,* 684 S.W.2d at 513. Such limitation on the right of a railroad to acquire land by condemnation is incorporated in Article I, section 26, of the Missouri Constitution. Section 26 states in pertinent part:

> The fee of land taken for railroad purposes without consent of the owner thereof shall remain in such owner subject to the use for which it is taken.

Mo. Const. art. I, § 26. When a railroad ceases to use the property for railroad purposes, therefore, the original owner or his grantees hold the property free from the burden of the easement. *Brown,* 152 S.W.2d at 654–655; *Schuermann,* 436 S.W.2d at 668; *Jordan v. Stallings,* 911 S.W.2d 653, 658 (Mo.App. S.D.1995); *G.M. Morris Boat Co., Inc. v. Bishop,* 631 S.W.2d 84, 88 (Mo.App. S.D.1982). When use of an easement for railroad purposes ceases, title to the fee is presumed to be in the abutting land owners to the center of the way in the absence of contrary evidence that the right-of-way was taken from the land of only one of the abutting landowners. *Brown,* 152 S.W.2d at 654–655; *Jordan,* 911 S.W.2d at 658; *G.M. Morris,* 631 S.W.2d at 88.

■ An easement may be abandoned without the necessity of a formal acknowledgment of abandonment. *Jordan,* 911 S.W.2d at 658. Abandonment is complete when the privilege of use authorized by the easement wholly and permanently ceases. *Kansas City Area Transp. Auth. v. 4550 Main Assoc., Inc.,* 742 S.W.2d 182, 189 (Mo. App. W.D.1986), *cert. denied,* 484 U.S. 1063, 108 S.Ct. 1020, 98 L.Ed.2d 985. Abandonment is proven by evidence of an intention to abandon without an intention to again possess it. *Id.* An easement for a railroad right-of-way is extinguished or abandoned when the railroad ceases to run trains over the land. *Schuermann,* 436 S.W.2d at 668; *Kansas City Area Transp.,* 742 S.W.2d at 189. "An intention to abandon is inferred by the discontinuance of rail service with no pros-

pect for resumption." *Kansas City Area Transp.*, 742 S.W.2d at 191.

■ In this case, Council Bluffs and St. Louis Railroad Company originally obtained the railroad right-of-way in 1879 by condemnation, and for over one hundred years, trains ran over the land. In 1983, Norfolk applied for and received a certificate of abandonment from the ICC. It then informed the ICC by letter in early 1984 that it had exercised its authority to abandon its right-of-way. At that time, a short line railroad company began operating its trains over the right-of-way. The company, however, soon experienced financial difficulties and discontinued operations in October 1986. Norfolk then removed the bridges, ties, and rail in 1988, and railroad services over the right-of-way were effectively abandoned. Norfolk's application for a certificate of abandonment with the ICC together with its subsequent removal of the railroad tracks constituted evidence of its intention to abandon the railroad easement.

Wabash argues that the railroad right-of-way or easement was not abandoned because the proposed use of the railroad corridor as a public trail for alternative transportation such as hiking and biking constitutes a "use for which [the easement was] taken" within the meaning of Article I, section 26, of the Missouri Constitution. It also contends that because one of the purposes of the trail is to keep the existing corridor intact for transportation needs that may occur in the future, such as reactivated rail service, its proposed use is for railroad purposes. Wabash's contentions, however, have no merit.

■ The language of Article I, section 26, is clear. It limits the use of a railroad easement taken by condemnation to "railroad purposes." In construing the term "railroad purposes" in the Missouri Constitution, the same rules are applied as those applied to statutory construction, except that the constitutional provision is given a broader construction due to its more permanent character. *Boone County Court v. State*, 631 S.W.2d 321, 324 (Mo. banc 1982). "In determining the meaning of a constitutional provision, the court must first undertake to ascribe to the words the meaning which the

people understood them to have when the provision was adopted." *Id.* Every word employed in the constitution is to be articulated in its plain, obvious, and common-sense meaning unless the context furnishes some ground to control, qualify, or enlarge it. *Akin v. Missouri Gaming Comm'n*, 956 S.W.2d 261, 263 (Mo. banc 1997)(quoting *State on inf. of Dalton v. Dearing*, 364 Mo. 475, 263 S.W.2d 381, 385 (Mo.1954)). The ordinary, usual, and commonly understood meaning of a word normally appears in the dictionary. *Id.*

■ "Railroad" is defined in Webster's Dictionary as:

a permanent road having a line of rails fixed to ties and laid on a roadbed and providing a track for cars or equipment drawn by locomotives or propelled by self-contained motors; *also:* such a road and its assets constituting a single property.

WEBSTER TENTH COLLEGIATE DICTIONARY 965 (1994). A similar definition appears in the American Heritage Dictionary:

1. A road composed of parallel steel rails supported by ties and providing a track for wheeled vehicles. 2. A system of railroad track, together with the land, stations, and other related property under one management.

THE AMERICAN HERITAGE COLLEGE DICTIONARY 1129 (3d ed.1993). Thus, under Article I, section 26, a railroad easement obtained by condemnation authorizes the use of the land for the purpose of operating a railroad over the land and for any legitimate railroad purpose incidental to the use of the land for operating trains over it. *See Hennick v. Kansas City Southern Ry. Co.*, 364 Mo. 883, 269 S.W.2d 646, 652 (Mo.1954). The term "railroad purposes" as used in the section does not encompass other forms of transportation such as walking or bicycling, and the recreational purposes for which Wabash proposes to use the property do not fall within the commonly understood meaning of "railroad purposes." Similarly, Wabash's contention that one of the purposes of the trail is to keep the existing corridor intact for future reactivations of rail service fails. The undisputed evidence, including the removal of the

bridges, ties, and rail by Norfolk, showed that no such use is realistic. The proposed development of a hiking, biking, cross-country skiing, and nature trail is completely unrelated to the operation of a railway and consistent only with an intent to wholly and permanently cease railway operations. *Kansas City Area Transp.*, 742 S.W.2d at 190. Thus, because the railroad abandoned the right-of-way, title to the fee is presumed to be in Landowners to the center of the right-of-way. *Jordan*, 911 S.W.2d at 658.

■■■■ Wabash argues that even if land was abandoned for railroad purposes, Landowners did not receive fee title to the land because they were not the original owners, heirs, or grantees of owners from whom the property was taken by condemnation in 1879. This argument, however, ignores the rule that when use of an easement for railroad purposes ceases, title to the fee is presumed to be in the abutting land owners to the center of the way in the absence of contrary evidence that the right-of-way was taken from the land of only one of the abutting landowners. *Brown*, 152 S.W.2d at 654–655; *Jordan*, 911 S.W.2d at 658; *G.M. Morris*, 631 S.W.2d at 88. No contrary evidence was presented revealing that the entire easement was taken from one property owner.

■■■■ Wabash also contends that Landowners did not receive title to the land upon abandonment by the railroad because the deeds by which Landowners acquired their land excluded the land corridor from the legal description. Specifically, the Boyles' deed identifies the right-of-way as boundary lines to the property conveyed. When a grantor conveys title to land abutting a railroad right-of-way, it is presumed, absent clear and convincing evidence to the contrary, that the grantor intended to convey to the middle line of the railroad right-of-way. *Brown*, 152 S.W.2d at 656; *Koviak v. Union Elec. Co.*, 442 S.W.2d 934, 938–939 (Mo.1969); *City of Columbia v. Baurichter*, 729 S.W.2d 475, 481 (Mo.App. W.D.1987). Thus, the fee of a railroad right-of-way passes to the grantees of abutting land absent evidence that the grantor of the land specifically intended to retain fee title to the land subject to the right-of-way or easement while disposing of the abutting land. *Id.* Wabash did not present any evidence that the grantor of the Boyles' property intended to retain title in the right-of-way in himself, therefore, the Boyles received the fee title to the middle of the railroad right-of-way when they acquired the abutting land.

## II. Adverse Possession

■■■■ Alternatively, Wabash claims that the trial court erred in granting summary judgment to Landowners on Landowners' action and on its counterclaim because it and its predecessors in title acquired title to the land through adverse possession for a period of over ten years. Specifically, it contends that since 1983, when the ICC issued the Norfolk and Western Railway Company and the Wabash Railroad Company a certificate of abandonment, and March 1994, when its claim of ownership of the land was questioned, it and its predecessors in title adversely possessed the right-of-way by operating a short-line railroad over the land, cutting weeds and caring for the corridor, paying taxes on the corridor, and purchasing liability insurance for the trail.

■■■■ To establish title by adverse possession, a claimant must prove by preponderance of the evidence that its possession was hostile under claim of right; actual; open and notorious; exclusive; and continuous for a period of ten years. *Kitterman v. Simrall*, 924 S.W.2d 872, 876 (Mo.App. W.D.1996). The ten years of possession must be consecutive years and need not be the ten years just prior to the filing of the law suit. *Id.* A claimant is able to tack its adverse possession on to the time of its grantors. *Id.*

■■■■ Wabash failed to prove a continuous possession by it or its predecessors in title for a period of ten years. Although the Norfolk and the Wabash Railroad Companies obtained a certificate of abandonment from the ICC in 1983, railroads continued to run over the corridor until late 1986. Wabash's own evidence revealed that the Northern Missouri Railroad, a short-line railroad company, operated trains over the tracks in Nodaway County from February 1984 until October 1986. While a railroad right-of-way is being used for railroad purposes, it cannot be

lost "by adverse possession under the ten-year statute of limitations applicable to real estate generally." *St. Louis–San Francisco Ry. Co. v. King*, 329 Mo. 1203, 50 S.W.2d 94, 98 (Mo.1932) (citation omitted). Consequently, when a railroad obtains an easement by condemnation, the railroad has perpetual and continuous use of the condemned right-of-way so long as it is used for the purpose for which it was taken. Mo. CONST. art. I, § 26; *Quinn*, 439 S.W.2d at 534 (citation omitted). Therefore, without deciding whether the other elements of adverse possession were proven, the latest the period of adverse possession commenced was October 1986.

Beginning in 1994, the Boyles mowed the grass, removed dead trees, and built fences on the former right-of-way that adjoined their property. Mr. Boyle also bulldozed a portion of the former easement. " The true owner of land may interrupt an adverse possession by reentry under circumstances showing an intention to assert dominion against the adverse user." *Metropolitan St. Louis Sewer Dist. v. Holloran*, 756 S.W.2d 604, 606 (Mo.App. E.D.1988). The rightful owner of property cannot be deprived of title by adverse possession if the owner is also in possession with the adverse claimant. Because of the Boyles' actions beginning in 1994 regarding the disputed land, Wabash's predecessor in title and its possession was not exclusive for the ten-year statutory period of time. Wabash's claim of adverse possession, therefore, must fail as a matter of law.

The trial court did not err in granting summary judgment in favor of Landowners on their action to quiet title and on Wabash's counterclaim for waste[2] based on Article I, section 26, of the Missouri Constitution.

The judgment of the trial court is affirmed.

All concur

---

**2.** Under section 537.430, RSMo 1994, only one who has the remainder or reversion in fee simple, after any intervening estate for life or years, or one who has a remainder or reversion for life or years only may maintain an action for waste.

---

§ 537.430, RSMo 1994. Wabash did not possess such an interest in the former right-of-way and, thus, could not maintain an action for waste against the Boyles.