Donald C. KOHLER and Joan V. Kohler, Respondents,

v.

Terry Scott BOLINGER, Appellant.

No. WD 59921.

Missouri Court of Appeals,
Western District.

March 12, 2002.

Elvin S. Douglas, Jr., Harrisonville, MO, for Respondents.

Ronald G. Hoskins, Jr., Kansas City, MO, for Appellant.

Before ELLIS, P.J., and EDWIN H. SMITH and HOWARD, JJ.

VICTOR C. HOWARD, Judge.

Donald and Joan Kohler filed suit against Terry Bolinger, seeking to quiet title based upon a claim of adverse possession of land to which Mr. Bolinger held title. The trial court found that the Kohlers satisfied the elements necessary to prove their claim for adverse possession and declared them fee simple titleholders of the disputed land. On appeal, Mr. Bolinger asserts that the trial court erred in so finding because the Kohlers failed to satisfy two elements of adverse possession—the ten-year possession element and the hostile use element.

We affirm.

## Background

The evidence adduced at trial, in a light most favorable to the judgment, follows:

In 1975, the Kohlers purchased land in Cass County, Missouri. It was their understanding that part of their purchase included a tract of land located just south of 245th Street, which ran through their property, and extending from the south right-of-way of such road to the center line of what is known as the Frisco Railroad. This tract of land is approximately 3.25 acres. The previous owner from whom the Kohlers purchased the property had farmed this tract since the 1950s. The Kohler family then farmed the land up to the grade or "rail bed" of the Frisco Railroad after they purchased it and until this dispute over that portion of property arose in 2000.

In 1990, the Frisco Railroad discontinued running trains on the tracks which the Kohler family farmed up to. The rails were subsequently removed in 1991 or 1992. In 1995, Mr. Bolinger purchased his property, which was to the north of the former Frisco right-of-way. The Kohlers were farming the disputed tract at that time. In late 1999, when Mr. Bolinger prepared to clean up the area around where the abandoned Frisco railroad once ran, he learned from the county assessor's office that the disputed tract was a part of his property.[1] In January of 2000, he confronted Mr. Kohler with the fact that Kohler had been wrongfully farming Mr. Bolinger's land.

The Kohlers then filed their action to quiet title to the land in April of 2000. Mr. Bolinger filed a counterclaim for trespass. After a trial to the court, the court found that the Kohlers had established ownership of the land by adverse possession and declared them fee simple title holders of the disputed tract legally described as:

---

1. Mr. Bolinger testified that, although the disputed land is not a part of the legal description in his deed, he believed that his payment of taxes on the land established his ownership. Beginning in 1992, Mr. Bolinger's predecessor in title paid property taxes on the land in question. Prior to 1992, the land had not been taxed, and apparently neither Mr. Bolinger's nor the Kohlers' titles included this tract of land in their legal descriptions. Mr. Bolinger learned in 1999 that he also was paying taxes on the land. The county assessor's testimony at trial indicated that such taxation was not necessarily indicative of ownership. Specifically, and quite interestingly, the assessor testified that "taxing someone doesn't determine in our office ownership of it. We're not concerned with who owns it. We're concerned with who we're going to tax.... There's really no rhyme or reason why they would have [assessed the tax] to one property as opposed to another." Although payment of taxes serves as evidence of ownership, *Brown v. Evans*, 182 S.W.2d 580, 583 (Mo.1944), it is not conclusive.

All that part of the East half of the Northwest Quarter of Section 33, Township 45, Range 30, which lies North of the center line of the Frisco Railroad right-of-way, now abandoned, subject to the right-of-way of 245th Street.

This appeal follows.

### Standard of Review

█ As this quiet title action was tried to the court, our review of the trial court's judgment is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We must affirm the judgment if it is supported by substantial evidence, is not against the weight of the evidence and the trial court did not erroneously declare or apply the law. *Id.; Shoemaker v. Houchen*, 994 S.W.2d 40, 44 (Mo.App. W.D. 1999).

### Adverse Possession

█ To establish title to the disputed tract of land by adverse possession, the Kohlers were required to prove by preponderance of the evidence that their possession of the disputed tract of land was hostile, actual, open and notorious, exclusive, and continuous for a period of ten years. *Boyles v. Mo. Friends of the Wabash Trace Nature Trail, Inc.*, 981 S.W.2d 644, 650 (Mo.App. W.D.1998). It is important to keep in mind that

> Adverse possession presents mixed questions of law and facts, and the principles or elements to prove such a case are viewed with the view that every property is unique. "Each case must be decided in light of its own unique circumstances. Much depends on the location, the character and the use to which the land in question may reasonably be put."

*Kitterman v. Simrall*, 924 S.W.2d 872, 876 (Mo.App. W.D.1996) (quoting *Teson v. Vasquez*, 561 S.W.2d 119, 125 (Mo.App. 1977)).

On appeal, Mr. Bolinger contends that the Kohlers failed to satisfy the "ten year" and "hostile" elements, so their claim must fail. Thus, we address only those two elements below.

### Point I: Ten–Year Requirement

█ In accordance with Section 516.010 RSMo 2000, in order to establish their right to the land by adverse possession, the Kohlers were required to prove, as one element of their claim, that their possession of the land in question was for at least ten consecutive years. The ten years "must be consecutive years and need not be the ten years just prior to the filing of the law suit." *Kitterman*, 924 S.W.2d at 876. If necessary, they may tack their adverse possession on to the time of their grantors. *Id.* Once the ten-year period has run and the other adverse possession elements are satisfied, "the possessor is vested with title and the record owner is divested." *Id.*

Mr. Bolinger argues that the existence of the railroad right-of-way on a portion of the property within ten years before suit was filed precludes satisfaction of the ten-year element of adverse possession. Mr. Bolinger is correct in pointing out that "[w]hile a railroad right-of-way is being used for railroad purposes, it cannot be lost 'by adverse possession under the ten-year statute of limitations applicable to real estate generally.'" *Boyles*, 981 S.W.2d at 650–51 (quoting *St. Louis–San Francisco Ry. Co. v. King*, 329 Mo. 1203, 50 S.W.2d 94, 98 (1932)). However, as explained below, whether or not the Kohlers could adversely possess the right-of-way itself is not decisive.

The disputed tract of land may actually be considered as two different strips of land—the land where the abandoned rail-

road right-of-way once was and the land not included in the right-of-way, which was farmed by the Kohlers. The Kohlers began farming the disputed tract up to or abutting the railroad right-of-way (south of 245th Street and up to the railroad grade) in 1975. As of 1985, the ten-year possession requirement is clearly established with regard to that portion of the property not including the right-of-way. The only other adverse possession element challenged by Mr. Bolinger was hostile intent, which, as explained below, was also satisfied. Thus, the Kohlers properly proved their claim of adverse possession with regard to the land south of 245th Street and abutting the north of the railroad right-of-way. That strip of land became theirs through adverse possession in 1985.

■■■ Next we consider that strip of land that was once the railroad right-of-way. Again, the right-of-way could not be adversely possessed while in existence. *Boyles,* 981 S.W.2d at 650–51. Upon the Frisco Railroad's abandonment of the right-of-way in the 1990s,[2] in the absence of evidence as to the source of title to the railroad initially, there is a rebuttable presumption that the north half of the right-of-way would attach to the abutting land to the north (the Kohlers') and the south half of the right-of-way would attach to the abutting land on the south (Mr. Bolinger's). *St. Louis County v. Delbet Inv. Co.,* 469 S.W.2d 951, 953 (Mo.App.1971). No evidence was introduced to show the source of title to the railroad initially, so this presumption was not rebutted.

In summary, the Kohlers obtained title to the portion of the property south of 245th Street up to the right-of-way by adverse possession. They obtained title to the northern portion of the right-of-way to the center line by operation of law upon the railroad's abandonment of the right-of-way.

Mr. Bolinger's first point on appeal is denied.

## Point II: Hostile Intent

■■■ With regard to the "hostile" element of adverse possession, "[h]ostile means a possession antagonistic to claims of all others, with an intent to occupy as one's own." *Kitterman,* 924 S.W.2d at 876. As further explained in *Kitterman,*

> Under the "hostile" element, even if the possessor mistakenly believed he had title and occupied the land as his own, the element is satisfied; i.e., he must intend to occupy as his own and there is no requirement for adverse possession that he be holding title to take away from a true owner.

*Id.*

At trial, both Mr. and Mrs. Kohler testified that they thought the disputed land, which they began farming in 1975, belonged to them. On cross-examination, they both testified that if they would have initially known that the property was not included in their deed, they would not have tried to take it away from the true owner. Mr. Bolinger contends that this testimony amounts to a "stated intention [ ] to possess only that land to which they possessed legal title," thereby negating the "hostile" element of adverse possession. Relying upon the Missouri Supreme Court's opinion in *Tillman v. Hutcherson,* 348 Mo. 473, 154 S.W.2d 104, 108–09 (1941), Mr. Bolinger contends that "one who does not intend to possess more than he actually owns does not have the intent necessary for adverse possession."

---

**2.** "An easement for a railroad right-of-way is extinguished or abandoned when the railroad ceases to run trains over the land." *Boyles,* 981 S.W.2d at 648.

However, "[f]or possession to be hostile, neither knowledge of the actual title holder, *nor intent to deprive him of title is required.* It is only necessary the claimant intended to occupy and did occupy the land as his own." *Glenville v. Strahl,* 516 S.W.2d 781, 782 (Mo.App.1974) (applying the analogous method of acquiring title by adverse possession to the method of acquiring prescriptive easements in discussing the hostile possession element) (emphasis added). Mr. Bolinger appears to suggest that the law requires a specific intent to take title from the rightful owner. This is not the law in Missouri. The law clearly states that:

> If the possessor occupies the land in question intending to occupy that particular piece as his own, his occupancy is adverse. It is not necessary that he intend to take away from the true owner something which he knows belongs to another, or even that he be indifferent as to the facts of the legal title. It is the intent to possess, and not the intent to take irrespective of his right, which governs.

*State ex rel. Edie v. Shain,* 348 Mo. 119, 152 S.W.2d 174, 176–77 (1941). This makes sense in that " '[o]therwise a reward would be placed upon dishonesty and conscious wrongdoing because a person, not conscious of wrongdoing, would derive no benefit from long-continued possession, even though he did actually claim all of the land as his own.' " *Id.* at 176 (quoting *Bell v. Barrett,* 76 S.W.2d 394, 396 (Mo.1934)). In this case, the Kohlers began farming the land in question as their own, up to the right-of-way in 1975. They certainly intended to occupy and did occupy the land as their own. The hostile possession element of adverse possession was properly proved.

Mr. Bolinger's second point on appeal is denied.

### Conclusion

The Kohlers properly proved their claim of adverse possession with regard to the land south of 245th Street and abutting the north of the railroad right-of-way. The remaining part of the abandoned railroad right-of-way, up to the center line, then became theirs by operation of law when the railroad was abandoned in the 1990s. The trial court's judgment is affirmed.

ELLIS, P.J., and EDWIN H. SMITH, J., concur.