**FAIRDEALING APOSTOLIC CHURCH, INC.,**
Respondent,

v.

**Oscar CASINGER, Appellant.**

**No. SD 31148.**

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 10, 2011.

Derrick S. Kirby, Doniphan, for Appellant.

Dale Nunnery, Doniphan, for Respondent.

DANIEL E. SCOTT, Judge.

Appellant challenges that part of a judgment which quiets title to .14 acres of land.[1] We summarize the evidence in the light most favorable to the judgment, consistent with our standard of review. *See Houston v. Crider*, 317 S.W.3d 178, 186 (Mo.App.2010).

### Background

In 1936, a half-acre tract near Fairdealing was deeded to "[t]he Pentecostal Assembly of Jesus Christ of this community and the Board of Trustees and their [sic] successors." Church members have met regularly at that site since the first church building was erected in the late 1930's. The church became known as "Fairdealing Apostolic Church" and was an unincorporated religious association until 2003, when it incorporated as "Fairdealing Apostolic Church, Inc."

---

1. Other aspects of the judgment, and matters relating thereto, are not contested on appeal or referenced in this opinion.

Appellant acquired land south and east of the church in 1989. A tree line east of the church building included remnants of a wire fence built by church members a few months after they finished the original church. For decades, church members mistakenly believed this was the property line, but their property actually did not run quite that far. This appeal involves the .14–acre strip lying between the tree line and the boundary established by the 1936 deed.

In 1995, Appellant showed the church pastor a survey and suggested that the church get an attorney. The church took no action, and Appellant did not impede church use of the strip. A new church building was built in 1996, part of which extended onto the strip, as did the church parking lot.

Respondent got its own survey in 2009, then petitioned to quiet title to the strip. Appellant and Respondent were the only parties and Respondent called the only witnesses at trial. The trial court ruled in Respondent's favor.

## Issues/Principles of Review

█ Appellant claims there was not sufficient evidence of adverse possession and necessary parties were not joined. We must affirm the judgment unless no substantial evidence supports it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Williams v. Frymire*, 186 S.W.3d 912, 916 (Mo.App.2006). The judgment is presumed correct, and Appellant has the burden to show otherwise. *Id.*

2. The judgment does not mention adverse possession or make explicit findings as to its elements. In the absence of a Rule 73.01 request for findings and conclusions, we deem all fact issues resolved consistently with the judgment, which we will affirm on any

## Adverse Possession

█ Appellant challenges the proof as to adverse possession[2] in two separate points which we will consider together. Each adverse possession case turns on its own unique circumstances. *Kitterman v. Simrall*, 924 S.W.2d 872, 876 (Mo.App. 1996). The successful claimant must show (1) hostile, (2) actual, (3) open and notorious, (4) exclusive, and (5) continuous possession for ten years or more. *Martens v. White*, 195 S.W.3d 548, 554 (Mo.App.2006). Appellant claims there was inadequate evidence of the first, fourth, and fifth elements.

### Hostile Possession

█ "Hostile" possession need not involve a boundary dispute and "will be satisfied even if the possessor only mistakenly believes" that he owns the property. *Watson v. Mense*, 298 S.W.3d 521, 526 (Mo. banc 2009). "It is the intent to possess rather than the intent to take from the true owner that governs." *Cooper v. Carns*, 263 S.W.3d 729, 733 (Mo.App.2008). This intent may be inferred from acts of dominion over the land. *Martens*, 195 S.W.3d at 555.

Evidence shows that from the 1930's through trial, the church and its members demonstrated their intent to possess the strip and exercised dominion over it. The church's propane tank has been there since the 1970's, followed by building improvements in 1996, and Appellant admits that church members mow the strip and park cars there.

reasonable theory supported by the record and within the pleadings. *See Underwood v. Hash*, 67 S.W.3d 770, 774 (Mo.App.2002). Respondent's pleadings were based upon an adverse possession theory.

## Exclusive Possession

■■ "Exclusive" possession means a claimant holds land "for the claimant only and not for another, for example using the land as his or her own backyard and not allowing others to so use the property." *Kitterman,* 924 S.W.2d at 876. This element is satisfied by showing that others do not jointly possess or use the land. *Martens,* 195 S.W.3d at 556.

The record indicates that church members, just months after building their first church in the 1930's, built a fence along what they believed was the property line. We find no evidence or suggestion of joint possession or use, other than Appellant or his predecessors walking across it a few times to talk with church members.

## Continuous Possession for Ten Years

■ We quote, in pertinent part, Appellant's claim that this element fails because Respondent had existed as a corporate entity for only six years prior to this lawsuit:

> [Respondent] admitted that it came into existence in June 2003, only six years prior to suit being filed. [Respondent] failed to show that any previous owner or occupier of the land transferred any interest in the land to it. . . . In other words, [Respondent] simply showed that it began to "squat" on the property in 2003. While previous religious groups may have used the same strip for parking, there was no evidence that these previous groups transferred their rights and interests to Respondent. No deeds, assignments, leases or other legal documents were adduced at trial that would show Respondent became the owner of any legal interests held by these past occupiers. Without such evidence, Respondent failed to establish a fundamental element of an adverse possession claim.

■ This argument overlooks important legal principles. The ten years must be consecutive, but need not immediately precede the lawsuit. *Kitterman,* 924 S.W.2d at 876. Once that period has run, "the possessor is vested with title and the record owner is divested." *Id.* Periods of adverse possession may "tack" to those of predecessors to reach the ten-year requirement. *Watson,* 298 S.W.3d at 526. Tacking by successive occupants need not involve a deed or written instrument; our courts have so stated for at least 150 years:

> [W]hether one occupant receives his possession from a prior one, or is a mere intruder upon an abandoned lot, is a question of fact which may be determined by any testimony which is legitimate and pertinent. We know of no rule of evidence which confines the proof to deeds or written instruments.

*Menkens v. Blumenthal,* 27 Mo. 198, 203 (1858).

Legitimate and pertinent testimony proved that Respondent was no mere intruder or squatter, but received its possession from the prior occupant, *i.e.,* the unincorporated church. Church members, current and former pastors, and a trustee consistently described the unincorporated church and Respondent as, in essence, the same church. The trial court found Respondent to be the "true and legitimate successor" of the unincorporated church, which had operated continuously at the same location since 1936. Thus, the record shows privity between Respondent and the unincorporated church for tacking purposes, resulting in a continuous period of adverse possession far in excess of ten years.

We deny Appellant's assertions of insufficient proof as to adverse possession.

### Joinder of Necessary Parties

 Appellant urges that "a necessary party was not named in that the Church Property is owned by the heirs of the original trustees of the Pentecostal Assembly of Jesus Christ." We disagree. These parties' competing claims to the strip could be decided without joining anyone else.

 "A quiet title action is not designed to adjudicate the plaintiff's title as 'superior to the whole world,' but only as compared to the other parties." *Erwin v. City of Palmyra*, 119 S.W.3d 582, 586 n. 3 (Mo.App.2003) (emphasis in original), *quoted in Jackson v. City of Cassville*, 234 S.W.3d 627, 630 n. 5 (Mo.App.2007). Respondent was entitled to have a court decide whether it or Appellant had better title as between themselves, even if "the real title" was held by a non-party. *Bailey v. Williams*, 326 S.W.2d 115, 121 (Mo. banc 1959). This has long been our law. *See, e.g., German Evangelical Protestant Congregation of Church of Holy Ghost v. Schreiber*, 277 Mo. 113, 209 S.W. 914, 916 (1918).

Appellant notes that the unincorporated church could hold real estate only by its trustees,[3] but does not show why that makes a difference here. Respondent was incorporated when it filed suit, and it claimed the strip by adverse possession, not by deed. Point denied. Judgment affirmed.

BARNEY and BATES, JJ., concur.

---

3. *See In re Marriage of Haugh,* 978 S.W.2d 80, 88 (Mo.App.1998).