KNOX COUNTY STONE CO.,
Plaintiff/Respondent,

v.

BELLEFONTAINE QUARRY, INC., Defendant/Appellant, Maryon Industries,
Inc., Intervenor/Appellant.

Nos. 73826, 73872.

Missouri Court of Appeals,
Eastern District,
Division Three.

Dec. 15, 1998.

David L. Welsh, Welsh & Hubble, P.C., St. Louis, for appellant Bellefontaine Quarry, Inc.

Gerard F. Hempstead, Paul E. Petruska, Brasher Law Firm, L.C., St. Louis, for appellant Maryon Industries, Inc.

Stephen C. Murphy, Devereux, Murphy, Striler, Brickey & Sher, St. Louis, for respondent Knox County Stone Co.

KATHIANNE KNAUP CRANE, Judge.

This appeal involves a dispute over the existence of an easement for a right-of-way for a railroad sidetrack which crosses over defendant's land. The trial court found that because plaintiff's predecessor in title had reserved the sidetrack when it conveyed the land over which it ran, plaintiff owned the sidetrack with full right of ingress and egress. The court ordered defendant and intervenor to remove certain encumbrances therefrom. Defendant and intervenor appeal, primarily arguing that plaintiff's interest in the sidetrack was abandoned or extinguished and did not exist when it was reserved in the deed. We affirm on the grounds that plaintiff's predecessor in title reserved an appurtenant easement for a right-of-way for a railroad sidetrack which passed to plaintiff by deed of the estate to which the easement was appurtenant and was not extinguished by non-use or abandonment.

## FACTUAL BACKGROUND

Plaintiff, Knox County Stone Company (Knox County), and defendant, Bellefontaine Quarry, Inc., own properties in north St. Louis County along the Missouri River which are the sites of quarry operations. These properties are separated by Highway 367 and the main line tracks of the Burlington Northern Railroad (the railroad). Bellefontaine Quarry's property (west tract) is west of the highway and the railroad tracks and Knox County's property (east tract) is east of the highway and the railroad tracks.

Missouri Portland Cement Company (MPC) originally owned both tracts as one parcel of property. It operated a quarry on what is now the east tract to provide rock for its cement plant on Riverview Boulevard in the City of St. Louis. In 1947 MPC and the railroad's predecessor entered into an industrial trackage agreement whereby MPC paid the railroad to construct a sidetrack on its property, MPC became the owner of the track, and the railroad obtained the right to use the track. The sidetrack ran from the railroad's main line to the west of Highway 367, then curved east under the highway bridge and over to its quarry. MPC used the sidetrack to transport rock from its property to the main tracks until 1979. MPC shut down the operations of its Riverview Boulevard plant in November, 1981, and did not take rock from its quarry after that date.

Beginning in 1968 MPC had leased part of what is now the west tract to West Lake Stone & Material Co. (West Lake), which operated an asphalt plant on the property. By quitclaim deed dated August 30, 1985, MPC conveyed the whole tract of land, including the West Lake lease, to H.K. Porter. H.K. Porter subsequently separated the property into the two tracts, the west tract and the east tract, identified above. By general warranty deed dated March 17, 1986, H.K. Porter conveyed the west tract to West Lake. In the deed, H.K. Porter reserved to itself an easement "for a perpetual right-of-way for a railroad sidetrack as presently existing" on the west tract.

On December 22, 1986, H.K. Porter conveyed the east tract to Central Stone "with all and singular, the rights, privileges, appur-

tenances and immunities thereto belonging or in anywise appertaining." When the property was conveyed to Central Stone in 1986, the sidetrack was not capable of handling any rail traffic. The rail and ties were still visible but rock and debris partially covered the tracks. In January and February of 1988, Central Stone began discussions with the railroad about reinstating rail service. Central Stone obtained quotes for renovating the rail and ties and putting in new switches. Central Stone's president testified it planned to use rail service from this quarry site, but work on the rail project was delayed in favor of other business priorities, including reestablishing quarry operations.

West Lake conveyed the west tract to Bellefontaine Quarry by general warranty deed dated July 18, 1991. As part of the sale transaction, Bellefontaine Quarry leased the asphalt plant portion of the tract to West Lake for 99 years. West Lake sublet the asphalt plant to intervenor, Maryon Industries, in May, 1993. Bellefontaine Quarry built a security gate at its entrance, which is on the sidetrack, and which would have to be moved if the sidetrack was used for rail service.

In late 1993, Central Stone resumed discussions with the railroad about reinstating rail service. By letter dated January 6, 1994 the railroad gave Central Stone a list of stipulations to complete in order to reinstate rail service. Central Stone reinitiated bid solicitations to refurbish the rails and resumed its contacts with the railroad to reinstall rail service. On August 8, 1994 Central Stone sent a courtesy notice to Bellefontaine Quarry that it had retained the services of a rail contract company to clean up and refurbish the rail spur. However, Bellefontaine Quarry would not allow Central Stone on the west tract to refurbish the sidetrack or estimate the cost of the refurbishing.

H.K. Porter executed a quitclaim deed dated August 5, 1994 specifically conveying the sidetrack to Central Stone.

## PROCEDURAL BACKGROUND

On November 23, 1994 Central Stone filed a petition in which it alleged its ownership of the railroad sidetrack and requested that Bellefontaine Quarry be ordered to remove all encumbrances from the sidetrack. By counterclaim Bellefontaine Quarry sought to quiet title to the sidetrack and reform and cancel existing deeds which reserved the sidetrack to plaintiff. Maryon Industries, Bellefontaine Quarry's sublessee, was allowed to intervene. During the litigation, on April 1, 1998, Central Stone conveyed the east tract to its wholly-owned subsidiary, Knox County. As a result Knox County was substituted for Central Stone as plaintiff.

After a bench trial the trial court entered judgment for Knox County on both the petition and the counterclaim. The court found that, because H.K. Porter had reserved the sidetrack in its conveyance to West Lake in 1986, H.K. Porter's successor, Knox County, is the owner of the sidetrack. The court ordered Bellefontaine Quarry to remove gateposts from the sidetrack and ordered Maryon Industries to remove a trailer from the sidetrack. Maryon Industries and Bellefontaine Quarry have separately appealed.

## DISCUSSION

■ On review of this court-tried case, we sustain the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. Rule 73.01(c); *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We accept the evidence and inferences favorable to the prevailing party and disregard all contrary evidence. *Lake Cable, Inc. v. Trittler*, 914 S.W.2d 431, 434 (Mo.App.1996).

In their briefs Bellefontaine Quarry and Maryon Industries (hereinafter jointly referred to as appellants) raise essentially the same points, albeit in a different order. They each contend that the trial court erred in declaring that Knox County owned the sidetrack because rights to the sidetrack had been abandoned or extinguished and did not exist when it was reserved in 1986. They further assert that the trial court's action was barred by the doctrine of laches. We will consider their points by subject matter.

I. *Claims Relating to the Creation and Existence of the Easement*

Appellants each contend that Knox County and its predecessors in title, Central Stone, H.K. Porter, and MPC, abandoned the sidetrack and therefore had no rights to use the sidetrack. They argue that the easement was an easement for a particular purpose, a railroad sidetrack, and that the easement ceased to exist when MPC and H.K. Porter no longer used the right-of-way as a sidetrack. They further argue that H.K. Porter did not reserve any easement in its March 17, 1986 indenture because no sidetrack in use was "presently existing." They finally argue that H.K. Porter could not convey any easement by quitclaim deed in 1994 because it no longer had an easement to convey.

A. *Claims of Abandonment Before March 17, 1986*

■■■ Appellants, relying on evidence that MPC stopped using the sidetrack in 1979 and stopped quarrying rock in 1981 and that H.K. Porter did not use the sidetrack, assert that the easement was abandoned by non-use and therefore did not exist in March, 1986 and could not be reserved in the March 17, 1986 deed. The fallacy of this argument is that no easement existed until 1986, and therefore there was no easement which could be abandoned. Until H.K. Porter conveyed the west tract on March 17, 1986 to West Lake, the entire property, including the sidetrack, was united in title under one owner, MPC, which was succeeded by H.K. Porter. An owner cannot have an easement over its own land. *Denning v. Manley*, 610 S.W.2d 51, 56 (Mo.App.1980); *Ball v. Gross*, 565 S.W.2d 685, 688 (Mo.App.1978). Neither H.K. Porter nor MPC could "abandon" or "extinguish" an easement which did not exist. An owner's use or non-use of its own property for any particular purpose cannot affect its future right to separate title and reserve an easement in the newly created servient tract.

B. *Existence of Sidetrack "in Use" on March 17, 1986*

Appellants next argue that no easement was created by the March 17, 1986 deed because no sidetrack existed which was being used. In the March 17, 1986 deed, H.K. Porter separated the title and conveyed the west tract to West Lake, under and subject to "an easement for a perpetual right-of-way for a railroad sidetrack as presently existing on [west tract], [West Lake Quarry] not responsible for sidetrack maintenance." Appellants argue that, because no sidetrack was being used, there was no sidetrack "presently existing" and therefore the language was ineffective to create an easement for the sidetrack. Again we disagree.

■■■ This clause effectively created an appurtenant easement by reservation. A reservation is "of a thing not in being, and is newly created." *Dozier v. Toalson*, 180 Mo. 546, 79 S.W. 420, 422 (Mo.1904) (quoting *Snoddy v. Bolen*, 122 Mo. 479, 25 S.W. 932, 933 (Mo. banc 1894)). In a deed "a reservation is the creation, in behalf of the grantor, of some new right issuing out of the thing granted – that is to say, something which did not exist as an independent right." *Id.* Accordingly, an easement may be created by reservation. The easement could not exist prior to the deed and is newly created by the deed. An easement so created is equivalent, for the purposes of creation of the easement, to an express grant of the easement by the grantee. *Robins v. Wright*, 331 Mo. 377, 53 S.W.2d 1046, 1049 (Mo.1932).

■■■ By this clause H.K. Porter clearly reserved an easement. *See Stotzenberger v. Perkins*, 332 Mo. 391, 58 S.W.2d 983, 986 (Mo.1933). This clause gave H.K. Porter and its successors in title to the east tract the right to maintain the roadway in condition for passage and the right to free passage for any purpose connected with the enjoyment of the estate. *Id.* The easement was a right or privilege to be used for the benefit of H.K. Porter's east tract, rather than a personal right, and, therefore was an appurtenant easement.[1] *Heigert v. Londell Manor, Inc.*, 834 S.W.2d 858, 868 (Mo.App.1992); *Brown*

---

1. "Two of the principal legal attributes of an easement appurtenant for right of way purposes are the existence of both a dominant and servient tenement and that one terminus of the right of way 'must lie on the land to which it is claimed to be appurtenant.' " *Three-O-Three Investments, Inc. v. Moffitt*, 622 S.W.2d 736, 739 (Mo.App.1981).

v. Redfern, 541 S.W.2d 725, 729 (Mo.App. 1976).

■■■■ As an appurtenant easement, the purpose of the easement was to benefit the dominant estate by reservation of the sidetrack right-of-way to the main line of the railroad. By reserving a perpetual right-of-way for a railroad sidetrack, the grantor did not have to be presently using the right-of-way as a railroad sidetrack. A grantor can reserve an easement for a right-of-way for a road the grantor intends to construct in the future and is not bound to build a specific road or build it within a specific time frame. *Loumar Dev. Co. v. Redel*, 369 S.W.2d 252, 255–56 (Mo.1963).

■■■■ When we interpret the meaning of a clause in a deed which reserves an easement, we consider the clause as a whole and give controlling effect to the parties' intent. *Stroup v. Johnson*, 539 S.W.2d 711, 712 (Mo.App.1976). We agree with plaintiff that this clause was intended to reserve an easement in the land over which the sidetrack ran and the "presently existing" language referred to the location, not the use, of the sidetrack. The reference to the sidetrack was the means of identifying the property in which the easement was reserved. "In general 'any description in the conveyance of an interest in real property is sufficient if it affords the means of identification of the property.'" *Hoelscher v. Simmerock*, 921 S.W.2d 676, 679 (Mo.App.1996) (quoting *Czarnecki v. Phillips Pipe Line Company*, 524 S.W.2d 153, 157 (Mo.App.1975)).

C. *Termination by Abandonment After March 17, 1986*

Appellants next argue that, if MPC and H.K. Porter did not abandon the sidetrack, Central Stone abandoned the sidetrack by allowing the agreement with the railroad to operate the sidetrack to be cancelled and failing to use the sidetrack for railroad service.

■■■■ Once an easement is established in plaintiff, defendant has the burden to show abandonment. *United Realty Co. v. Outlaw*, 472 S.W.2d 378, 382 (Mo.1971). Whether there has been an abandonment is a question of fact. *Franck Bros., Inc. v. Rose*, 301 S.W.2d 806, 812 (Mo.1957). "An abandonment is proved by evidence of an intention to abandon as well as of the act by which that intention is put into effect; there must be a relinquishment of possession with intent to terminate the easement." *Id.*

■■■■ An easement created by grant is not lost by non-user, no matter how long continued. *Id.*; *Dalton v. Johnson*, 320 S.W.2d 569, 574 (Mo.1959). Thus, non-user for a twenty-four year period does not constitute abandonment. *Harrison v. State Highways and Transp. Com'n*, 732 S.W.2d 214, 218 (Mo.App.1987). Further a non-user combined with failure to maintain and neglect of the roadway is insufficient to extinguish an easement. *Franck*, 301 S.W.2d at 813. The rationale for this rule has been expressed as follows:

> "A person who acquires title by deed to an easement appurtenant to land has the same right of property therein as he has in the land and it is no more necessary that he should make use of it [the easement] to maintain his title than it is that he should actually occupy or cultivate the land."

*American Brass Co. v. Serra*, 104 Conn. 139, 132 A. 565, 567 (Conn.1926) (quoting *Adams v. Hodgkins*, 84 A. 530, 109 Me. 361, 42 L.R.A. (N.S.) 741 (1912)).

■■■ Appellants cite a number of cases involving abandonment of easements granted to railroads for rights-of-way. An easement for a railroad right-of-way is extinguished or abandoned when the railroad ceases to run trains over the land with no prospect for resumption. *See Boyles v. Missouri Friends of the Wabash Trace Nature Trail, Inc.*, 981 S.W.2d 644 (Mo.App.1998). *See also, Schuermann Enter., Inc. v. St. Louis Co.*, 436 S.W.2d 666, 668 (Mo.1969); *Jordan v. Stallings*, 911 S.W.2d 653, 658 (Mo.App. 1995); *Kansas City Area Transp. Auth. v. 4550 Main Assoc., Inc.*, 742 S.W.2d 182, 189 (Mo.App.1986). These and other cases involving railroad easements are factually inapposite because they involve easements conveyed to railroads for railroad purposes which, by operation of law or by the terms of the conveyance, terminated when the railroad permanently stopped railroad service.

In contrast, in this case the landowner reserved an appurtenant easement in land it owned to itself when it made a conveyance of that land. The landowner was not a railroad and reserved the easement to benefit its retained property with a right-of-way to the main line of the railroad. It did not impose on itself an obligation to keep train service running on the land, but rather reserved for itself a right of access to the main railroad line. Knox County and its predecessors in title did not lose their reserved right-of-way for a sidetrack to the main line of the railroad by failing to have trains run over the access route.

### D. *1994 QuitClaim Deed*

Appellants finally argue that the 1994 quitclaim deed could not and did not convey an easement to Central Stone. They are correct, but this does not affect the disposition of their appeal. The easement was created by reservation in the March 17, 1986 deed. As an appurtenant easement, it passed by deed with the dominant estate, whether or not the easement was specifically mentioned in the transfer. *Beldner v. General Electric Co.*, 451 S.W.2d 65, 75 (Mo. 1970); *Fortenberry v. Bali*, 668 S.W.2d 216, 219–20 (Mo.App.1984); *Three–O–Three*, 622 S.W.2d at 739–40; *Stroup*, 539 S.W.2d at 712–13. The right to the easement passed to H.K. Porter's successors in title to the east tract even if it was not specifically described in the succeeding deeds. Accordingly, the 1994 quitclaim deed conveying the easement from H.K. Porter to Central Stone was unnecessary because the easement had already passed to Central Stone when H.K. Porter deeded the east tract to Central Stone in 1986.

## II. *Laches*

Appellants next contend that the trial court erred in not ruling that plaintiff's action was barred by laches.

"Invocation of laches requires that a party with knowledge of the facts giving rise to his rights delays assertion of them for an excessive time and the other party suffers legal detriment therefrom." *Lyman v. Walls*, 660 S.W.2d 759, 761 (Mo. App.1983). In order for delay to support the doctrine of laches, it must be unreasonable and unexplained and must be shown to have caused disadvantage and prejudice to the defendant, but does not apply where "no one has been misled to his harm in any legal sense by the delay, and the situation has not materially changed." *Metropolitan St. Louis Sewer District v. Zykan*, 495 S.W.2d 643, 657 (Mo.1973). In considering the doctrine, the court should give regard to the equities and conduct of all the parties. *Stenger v. Great Southern Savings and Loan Ass'n*, 677 S.W.2d 376, 383 (Mo. App.1984). Laches is not a favored doctrine and equity does not encourage its invocation to defeat justice, but only to prevent injustice. *Higgins v. McElwee*, 680 S.W.2d 335, 341 (Mo.App.1984). *Blackburn v. Richardson*, 849 S.W.2d 281, 289 (Mo.App.1993).

In this case, Bellefontaine Quarry had placed gates over the sidetrack three years before the institution of this action. Central Stone's president did not consider the presence of the gates to be a problem because the gate posts could be moved when rail service resumed. Central Stone did not know that Bellefontaine Quarry was claiming ownership in the easement until mid–1994 when Bellefontaine Quarry refused to allow Central Stone access to the sidetrack to refurbish the track. Central Stone filed this action within three months of Bellefontaine Quarry's refusal.

The claim is not barred by laches. These points are denied.

## III. *Counterclaim*

For its third point, Bellefontaine Quarry claims that the trial court erred in not granting relief on its counterclaim, asserting the same reasons it sought reversal of the judgment in the petition. This point is moot in light of our disposition of the appeal from the judgment on the petition. Point three is denied.

The judgment of the trial court is affirmed.

PAUL J. SIMON, P.J. and LAWRENCE E. MOONEY, J., concur.