**Mark and Carole NOLTE,
Respondents,**

v.

**Wendell A. and Sandra F. CORLEY,
Appellants.**

**No. WD 60301.**

Missouri Court of Appeals,
Western District.

June 28, 2002.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 22, 2002.

James A. Rust, Lexington, for Appellants.

Robert H. Schnieders, Oak Grove, for Respondents.

Before HAROLD L. LOWENSTEIN, P.J., NEWTON and HOLLIGER, JJ.

HAROLD L. LOWENSTEIN, Judge.

The action appealed from was initiated by the respondents, Mark and Carol Nolte. The Nolte's filed a petition in circuit court to quiet title through extinguishment of an easement. The easement they sought to quiet title to was for use of a stairwell and upstairs hallway located in a building they owned which adjoined a building owned by the appellants, Wendell and Sandra Corley. After a bench-trial, the trial court found that there was insufficient evidence to show the existence of an easement; and that even if there had been sufficient evidence to establish an easement, it would have been terminated by adverse possession.

Wendell and Sandra Corley assert on appeal that the trial court erred in finding that there was insufficient evidence to establish an easement and also erred in finding that, if an easement existed, it was extinguished by adverse possession. This court finds: 1) that there was sufficient evidence to establish and easement in favor of the adjoining landowners; and 2) that although the Corleys did not abandon the easement, it was extinguished by adverse possession. The judgment is affirmed.

## Factual and Procedural History

Appellants, Wendell and Sandra Corley, and respondents, Mark and Carol Nolte, own adjoining buildings in Higginsville, Missouri. The Noltes' building is located at 2112 Main, and the Corleys' building is located at 2110 Main. Outside access to the upstairs of the building from the front of the building is through a stairwell and hallway which is within the boundaries of the Noltes' property. At some point in time, the hallway upstairs contained at least two doorways which opened up into the Corleys' building. Before continuing, it is necessary to trace back the ownership and activities of the owners of both properties.

In 1978, Delbert G. Hough and Judy K. Hough sold 2112 Main to Allen and Dana Nolte. Mr. Hough testified that during the time he owned the property he was the only person who had keys to all of the doors. Mr. Hough also testified that when he purchased the property, the two doors from the hallway to 2110 Main were nailed shut and that he also put plywood paneling over the door frames. Mr. Hough testified that during the time he owned the property, the doors to 2110 Main in the hallway were never used, not even by the owners of 2110 Main.

In 1981, Allen and Dana Nolte sold 2112 Main to Roger and Betty Nolte. Language in the deed read as follows: "Subject to the privilege of the owner of the property immediately north of the above described property to use the stairway and hallway of the brick building on the above described property." Roger Nolte testified that when he purchased the building in 1981, the doors to 2110 Main in the upstairs hallway were nailed shut. He also testified that to his knowledge the doors were nailed shut when Allen Nolte bought the property in 1978. Roger Nolte claimed that to his knowledge, nobody ever used the stairway and hallway without his permission because he had the only keys.

In 1988, a fire that originated in 2110 Main burned through to 2112 Main. Following the fire, Lawrence Meinershagen was hired to do some reconstruction work. He testified that after he was finished, the doors from the hallway into 2110 Main had been completely paneled over.

Mark and Carol Nolte, the respondents, purchased 2112 Main in 1999. The warranty deed signed by the respondents did not contain the easement language set out above concerning access to the stairway and upstairs hallway.

The Corleys purchased 2110 Main in 1992. After purchasing the property, Mr. Corley testified that he requested keys from Roger Nolte on several occasions. Roger Nolte would always tell him they would work it out later. The final time Mr. Corley asked Roger Nolte for keys he said, "Absolutely no." Mr. Corley testified that in March of 1999, he cut a door through from his property to the hallway.

In that same month, the respondents, Mark and Carol Nolte, purchased the property. In May of 1999, the Noltes filed their petition to quiet title through extinguishment of an easement. The Noltes claim in their petition that for a period in excess of ten years they and their predecessors had possessed the stairway and hallway in a hostile, actual, open, and continuous fashion without interruption to the exclusion of all others and as such, terminated any easement that existed in favor of the Corleys' land.

After a bench-trial, the court issued its judgment finding that: 1) there was insufficient evidence to show the existence of an easement over the inside stairway and connecting hallway on the Noltes' property in favor of the Corleys' property "either by written grant, by written reservation, by

implication, or by prescription;" 2) the Noltes and their predecessors locked the door from the street to the stairway and retained the only keys prior to 1984 to the present; 3) the Noltes and their predecessors locked the door from the outside stairway to the hallway and retained the only keys prior to 1984 to the present; 4) access to the stairway from the Corleys' property was restricted by the doors being nailed shut and later boarded over from 1976 to 1998; 5) if the evidence would have been sufficient to establish an easement, the actions of the Noltes would have terminated the easement by adverse possession; and 6) the Corleys have an easement over the outside stairway located on the back portion of the Noltes' property. The trial court concluded that the Noltes have all right, title and interest in their property free and clear from any claims or interests of the Corleys, except as included in the description of the property (which allows an easement to the Corleys over the outside stairway located in the back of the Noltes' property). The Corleys appealed.

### Standard of Review

■■■ Appellate review of a court-tried case is governed by *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). The judgment of the trial court will be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Id.* at 32. This court defers to the trial court's findings of fact, due to the superior ability of the trial court to judge the credibility of the witnesses. *B–Mall Co. v. Williamson,* 977 S.W.2d 74, 77 (Mo.App.1998). All evidence and permissible inferences favorable to the prevailing party are accepted as true, while all evidence and inferences to the contrary are disregarded. *Id.*

### I.

■■■ The Corleys argue in their first point that the trial court erred in finding that there was insufficient evidence to establish an easement because the deed to the Noltes' property granted to the Corleys' predecessors in title an easement over the hallway and stairway. The Corleys claim that the only prerequisite for the creation of an easement by a signed writing is the expression of purpose to create an easement:

[A] grantee of land takes title subject to duly recorded easements which have been granted by his predecessors in title. Generally, also, a person who purchases land with knowledge or with actual, constructive, or implied notice that it is burdened with an easement in favor of other property ordinarily takes the estate subject to the easement.

*Loumar Dev. Co. v. Redel,* 369 S.W.2d 252, 257 (Mo.1963). An easement need not be described in a deed in order to be conveyed. *See Hall v. Allen,* 771 S.W.2d 50, 53 (Mo. banc 1989).

It appears that the Corleys, or their predecessors, did in fact have an easement right in the stairway and upstairs hallway. Mark and Carol Noltes' predecessors in title were Roger and Betty Nolte. The language in the deed Roger and Betty executed read, "Subject to the privilege of the owner of the property immediately north of the above described property to use the stairway and hallway of the brick building on the above described property." Further, although there is no testimony as to the knowledge of Mark and Carol Nolte with regard to the easement, Roger Nolte did have actual notice of the easement when he owned the property. Therefore, the trial court erred in finding that there was insufficient evidence to establish an easement. This does not end the matter. Although the trial court's ruling on this

point was not correct, a complete record was made on the issue of whether or not there was an abandonment or extinguishment of the easement by adverse possession.

## II.

The Corleys argue in their second point that the trial court erred in:

[F]inding that the easement was terminated by adverse possession because an easement by grant can only be terminated by clear and convincing evidence of acts by the owner of the easement not by actions of the grantor of the easement, in that the evidence showed no acts by the grantees of the easement that would constitute an abandonment of the easement.

The Corleys mix two legal theories in their point relied on: abandonment and adverse possession. This court will address each theory separately, keeping in mind that all evidence and permissible inferences favorable to the Noltes are accepted as true, while all evidence and inferences to the contrary are disregarded. *B–Mall Co.*, 977 S.W.2d at 77.

### A. Abandonment

■■■■ Once an easement has been established, the party challenging the easement has the burden to show abandonment. *Knox County Stone Co. v. Bellefontaine Quarry, Inc.*, 985 S.W.2d 356, 361 (Mo.App.1998). Whether an easement has been abandoned is a question of fact. *Id.* An easement by grant is not lost by non-user no matter how long continued. *Id.* If, however, "'the nonuser (is) accompanied by conduct of the owner of the easement definitely evincing an intention to surrender the right, the easement is extinguished.'" *Ball v. Gross*, 565 S.W.2d 685, 689 (Mo. App.1978).

■■■ In this case, although non-use of the easement extended for a lengthy period of time, the record does not reflect any actions by the Corleys evincing an intention to abandon the easement. To the contrary, Mr. Corley testified that he requested keys from Roger Nolte on several occasions and that after the final time he asked Roger Nolte for keys, he cut a door through to the hallway. As such, the evidence does not show that the Corleys intended to abandon the easement.

### B. Adverse Possession

■■■■ An easement can be extinguished by an "'occupation on the part of a person other than the owner of the easement adverse to the right claimed, in connection with nonuser by the owner of the easement.'" *Loumar*, 369 S.W.2d at 257 (quoting 28 C.J.S. Easements § 63, pp. 729–30). The possession must be (1) hostile and under a claim of right; (2) actual; (3) open and notorious; (4) exclusive; and (5) continuous for period of ten years. *Boyles v. Mo. Friends of Wabash Trace Nature Trail, Inc.*, 981 S.W.2d 644, 650 (Mo.App.1998). A claimant's period of adverse possession may be tacked to his predecessors in title to establish the requisite ten-year period. *Flowers v. Roberts*, 979 S.W.2d 465, 470 (Mo.App.1998). The burden of proving each element by a preponderance of the evidence is on the party claiming adverse possession, and failure to prove even one element defeats the claim. *Shoemaker v. Houchen*, 994 S.W.2d 40, 44 (Mo.App.1999). Due to the facts of this case and to alleviate redundancy, the first four elements of adverse possession will be analyzed together.

■■■■ "'Hostile and under claim of right' means that the possession must be opposed and antagonistic to the claims of all others, and the claimant must occupy

the land with an intent to possess it as his or her own." *Flowers*, 979 S.W.2d. at 469. "Actual possession" can be shown by acts of occupancy which indicate a present ability to control the land and an intent to exclude others from such control. *Id*. " 'Open and notorious' possession is satisfied when there are 'visible acts of ownership' exercised over the disputed property." *Id*. (quoting *Witt v. Miller*, 845 S.W.2d 665, 668 (Mo.App.1993)). This requirement is to afford the owner reasonable notice, either actual or constructive, that an adverse claim of ownership is being made by another. *Id*. at 470.

▆▆▆▆ " 'Exclusive' possession means that the claimant must hold the land for himself or herself only, and not for another." *Id*. In order to satisfy this element, a claimant must show that he or she "wholly excluded" the owner from possession for the required period; but this does not mean that mere "sporadic use, temporary presence or permissive visits by others (including the title holder)" will negate this element and defeat a claim of adverse possession. *Id*. (quoting *Machholz–Parks v. Suddath*, 884 S.W.2d 705, 708 (Mo.App. 1994)).

Mr. Hough, who owned 2112 Main from approximately 1974 until 1978, when he sold the property to Allen and Dana Nolte, testified that during the time he owned the property he was the only person that had keys to all of the doors. Mr. Hough also testified that the two doors from the hallway to 2110 Main were nailed shut. In addition, Mr. Hough put plywood paneling over the door frames. Mr. Hough claimed that during the time he owned the property, the owners of 2110 Main never used the stairway or hallway.

Forest Russell testified that he owned 2110 Main from approximately 1974 or 1975 until 1983. He testified that the doors to the hallway from his property were initially open, but were nailed shut "probably after 1976 or '77 somewhere in there."

Roger Nolte testified that when he purchased 2112 Main in 1981, the doors to 2110 Main in the upstairs hallway were nailed shut and had been nailed shut when Allen Nolte purchased the property from Mr. Hough in 1978.

In 1988, a fire that originated in 2110 Main burned through to 2112 Main. Following the fire, Lawrence Meinershagen was hired to do some reconstruction work. He testified that after he was finished, the doors from the hallway into 2110 Main had been completely paneled over.

Further, Roger Nolte testified that to his knowledge, nobody ever used the stairway and hallway without his permission because he had the only keys. Roger Nolte testified that the entire time his family has owned 2112 Main, only the family had keys to the doors. In fact, Mr. Corley testified that after purchasing the property, he requested keys from Roger Nolte on several occasions. Mr. Corley testified that Roger Nolte kept putting him off and that the final time he asked for keys Roger said, "Absolutely no."

Based upon this evidence, the first four elements of adverse possession have been met. As far back as the Houghs' ownership of 2112 Main, the doors from the hallway into 2110 Main have been nailed shut and keys to the stairway and hallway doors have been under the control of the owner of 2112 Main. The evidence here showed a complete interference with the defendants' ability to use the easement as ingress or egress from this area. *Frain v. Brda*, 863 S.W.2d 17, 20 (Mo.App.1993).

▆▆▆▆ The final requirement for adverse possession is that such possession must be continuous for a period of ten years. *Boyles*, 981 S.W.2d at 650. " 'Con-

tinuous' means without lapse, uninterrupted, for the entire statutory period." *Flowers*, 979 S.W.2d at 470. Although it is unknown to the this court when the easement first originated, language granting an easement was set forth in the deed transferring ownership of 2112 Main to Allen and Dana Nolte, dated 1978. From the foregoing evidence, it appears that a claim of adverse possession could have been made as far back as 1988. In fact, even if the clock started to run when Roger and Betty Nolte purchased 2112 Main in 1981, ten years of adverse, continuous possession had already passed by the time the Corleys purchased 2110 Main in 1992. As such, each element of adverse possession has been proven by a preponderance of the evidence.

Although this court finds that the trial court was incorrect in finding that there was insufficient evidence to establish an easement, the judgment was correct in finding that the easement would have been extinguished by adverse possession. This court will affirm a judgment that reaches the right result even if the trial court has given a wrong or insufficient reason for its decision. *Hunt v. Hunt*, 65 S.W.3d 572, 577 (Mo.App.2002). The judgment of the trial court is affirmed.

All concur.